ATTORNEY GENERAL v. RECORDER'S COURT JUDGE.

1. COURTS—JOURNAL AS OFFICIAL RECORD.

The journal of the recorder's court is the official record of the proceedings of that court under mandate of statute creating the court (CL 1948, § 726.3).

2. HOMICIDE—MURDER—DETERMINATION OF DEGREE BY JURY.

A general verdict of "guilty as charged" in prosecution for murder, without specifying the degree thereof, is invalid, it being the duty of the jury to determine the degree of murder (CL 1948, §§ 750.316, 750.318).

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Courts § 136.
[2] 26 Am Jur, Homicide § 571.
[3, 4] 39 Am Jur, New Trial §§ 201, 202.
[5] 15 Am Jur, Criminal Law §§ 473, 474.
[5] Power of trial court to change sentence after commitment or payment of fine. 168 ALR 706.
[6, 7] See, generally, 15 Am Jur, Criminal Law §§ 505, 507.
[8] 15 Am Jur, Criminal Law § 477.
[8] Right to credit for time served under erroneous or void sentence or invalid judgment of conviction necessitating new trial. 35 ALR2d 1283.

3. CRIMINAL LAW—DELAYED MOTION FOR NEW TRIAL—DISCRETION OF COURT.

A trial judge has inherent power to grant leave to file a delayed motion for a new trial in a case that was heard before him and accept a subsequent plea and pronounce sentence.

4. SAME—DELAYED MOTION FOR NEW TRIAL—DISCRETION OF COURT—SUPREME COURT.

The Supreme Court will not infringe upon the time-honored judicial prerogative of a trial court in the granting of leave to file a delayed motion for a new trial in a criminal case except for an abuse of judicial discretion.

5. SAME—AMENDMENT OF VALID SENTENCE—COMMUTATION BY GOVERNOR.

A court has no power to amend a sentence, validly imposed, after the prisoner has served a part of it, since to do so would infringe upon the exclusive power of the governor to commute sentence (Const 1908, art 6, § 9).

6. SAME—SENTENCE—STATUTES.

The matter of the punishment to be imposed following conviction of a crime is governed by applicable statutes.

7. SAME—LENGTH OF SENTENCE—STATUTES.

The length of imprisonment for a specific felony is a matter for legislative determination and is not subject to judicial supervision unless the sentence imposed violates the provisions of the statutes.

8. SAME—SENTENCE—ALLOWANCE FOR TIME SPENT UNDER VOID SENTENCE—EXECUTIVE CLEMENCY.

Action of trial court in setting aside a void conviction and sentence and, after accepting a plea of guilty of murder in the second degree, imposing a sentence which took into consideration the time which had been spent in prison under the void sentence *held*, proper, especially in view of subsequently enacted retroactive statute permitting such consideration as to time and not to have infringed upon or invaded the executive power of clemency; hence, trial court's *subpoenas duces tecum* to prison officials to bring prison records are ordered quashed where their operation had been stayed by prohibition proceedings (Const 1908, art 6, § 9; PA 1954, No 205).

Original petition for writs of prohibition and mandamus. Action instituted by department of correction officials, and carried on in the name of Frank

G. Millard, Attorney General for the State of Michigan, against W. McKay Skillman, Judge of the Recorder's Court of the City of Detroit. Writs sought to abate proceedings calculated to effect the release, on reduced sentence, of George Wruble, alias Frederick Stoysin, who was added as a defendant in these proceedings, and to compel vacating an order setting aside his previous conviction for a greater crime. Submitted October 12, 1954. (Calendar No. 45,877.) Writs denied December 29, 1954.

*Frank G. Millard,* Attorney General, *in propria persona,* and *Edmund E. Shepherd,* Solicitor General for plaintiff.

*Henrietta E. Rosenthal,* for defendant Judge.

*Platt & Platt,* for defendant Wruble.

BUSHNELL, J.   This is an original proceeding brought in this Court by petitioners Lloyd C. Fay and John W. Martin, who are, respectively, the supervisor of records for the division of pardons, paroles and probation of the department of corrections and the record clerk for the State prison of southern Michigan at Jackson. They sought a writ of prohibition against Honorable W. McKay Skillman, Judge of the Recorder's Court of the city of Detroit. The attorney general subsequently intervened as plaintiff and filed an amended petition in which he sought both writs of prohibition and mandamus. George Wruble, alias Frederick Stoysin, was joined as a defendant.

The parties disagree as to the questions involved. The defendant, Judge Skillman, raises 14 questions in the brief filed by his counsel, all of which may be summed up in the statement that he primarily attacks the remedies sought to be invoked by the at-

torney general and questions the propriety of the procedure. Defendant Wruble contends that the action taken by the defendant judge was proper and valid. No brief has been filed by the petitioners nor is one required because the attorney general has stepped into their place, and contends that the action of the judge of the recorder's court is a usurpation of the executive power of clemency and that writs of mandamus and prohibition are appropriate to correct and prevent such usurpation of authority.

Wruble, who was characterized in an opinion filed by the trial judge on January 11, 1945, as an experienced holdup man, who had served time in Ohio on robbery charges, and was wanted in other cities on other charges, together with 2 other men identified as Jules Doretti and Max Miaus, on November 25, 1933, held up and robbed a handbook located in the city of Detroit. During the holdup, one Dr. Julius Harris, a patron of this handbook, was shot and killed while using a telephone. He was shot by Miaus who suspected him of calling the police. Wruble and Doretti were arrested shortly thereafter and placed on trial, and both were found guilty under conditions hereafter related. Miaus was subsequently apprehended in California, brought back for trial, found guilty by a jury of murder in the first degree, and sentenced to life imprisonment.

The verdict in the Wruble case, returned on February 24, 1934, as indicated on the file cover, was "guilty murder 1st degree." As recorded in the short book and the journal the verdict reads: "Guilty as charged." Wruble and Doretti were sentenced on March 5, 1934, to life imprisonment, and the journal entry of such sentences bears the caption: "Heretofore convicted of murder in the first degree."

The mittimus indicates that after a plea of not guilty and a full hearing, Wruble was convicted of having committed the crime of "murder—1st de-

gree." Wruble's subsequent motion for a new trial filed on March 24, 1934, which did not challenge the validity of the verdict, was denied. On January 11, 1945, a motion by Doretti for leave to file a delayed motion for new trial, predicated on the claim that the verdict, judgment and sentence were contrary to law and the great weight of evidence, was denied. In the opinion filed at the time the trial judge noted that Doretti was charged with the crime of murder and was found guilty by the jury for the crime of murder in the first degree on February 24, 1934.

About 14 years after the verdict, Wruble, on April 9, 1948, filed a motion for leave to file a delayed motion for a new trial, on the ground that the jury's verdict on February 24, 1934, of "guilty as charged" was invalid for failure to fix the degree of the crime. This motion was heard in open court and denied, with the observation by the court that the file in the cause shows as follows:

"It shows that the proceedings were had before this Court and the verdict of the jury was 'guilty of Murder in the First Degree.' Now, of course, the short book is made up from the file and the Journal is made up from the short book, that is the usual practice, isn't it?"

The assistant prosecutor agreed with this statement and added the observation that:

"The original file shows that the clerk at that time indicated 'guilty of Murder in the First Degree' and from that writing, which is the only writing made by the clerk, the Journal and the short book are completed, and in this case it is perfectly obvious that they were incorrectly copied from the original file and, therefore, it is merely a clerical error in the Journal and the short book but isn't any type of an error that would in any way affect the trial or the verdict rendered by the jury."

After further discussion, the assistant prosecutor moved:

"That an order of *nunc pro tunc* be entered correcting the Journal and short book in this case as presented by this file No. A–7758 as to the incorrect copying of the original record regarding George Wruble, wherein the original file shows that the jury returned a verdict of guilty of murder in the first degree and that the short book and Journal were incorrectly copied and read 'guilty as charged' as being the verdict of the jury and I ask that the short book and Journal be corrected to read that the jury brought in a verdict of Guilty of Murder in the First Degree."

This motion was granted over the objection of defendant's attorney. About 2 years later, on March 1, 1950, new counsel for Wruble filed motions described in the brief of the attorney general as follows:

"(1) A motion (Exhibit 14) to set aside the order of April 13, 1948, on the ground, among others, that it changed the actual verdict of the jury, contrary to the 'official, legal and unimpeachable' entries in short book and Journal; and (2) a motion (Exhibit 15) for leave to file a delayed motion for new trial, on the ground that the jury had returned a void, general verdict of 'guilty as charged.' This latter motion was based upon the court's Journal and short book as well as upon the affidavits of jurors, which, however, are presently unavailable, though they were probably filed."

These motions were not heard until December 5, 1950, when certain procedural steps were taken. We quote the summary made by the attorney general in his brief as follows:

"(a) The respondent judge granted the motion of defendant Wruble to vacate the order of April 13, 1948, thus restoring the short book and Journal en-

tries recording the jury's verdict to be 'guilty as charged;' * * *

"(d) he immediately permitted Wruble to withdraw his former plea of not guilty and, without any factual showing whatsoever, accepted defendant's plea of guilty of murder in the second degree; and, finally, having accepted such plea,

"(e) the respondent judge at once sentenced Wruble to serve 15 to 18 years in State prison, said sentence to be entered *nunc pro tunc* as of March 5, 1934, the date of the original mandatory sentence to prison for life as punishment for first-degree murder committed in perpetration of robbery armed."

Formal orders were entered the same day and on the following day a mittimus issued. On April 8 and May 6, 1953, counsel for Wruble filed (and there are still pending before the defendant judge) as stated by the attorney general:

"Three motions based on the claim that on the 5th day of December, 1950, the trial court sentenced defendant to a prison term of 15 to 18 years commencing March 5, 1934; that said maximum term has been completed by defendant and has expired, yet Wruble 'has not been discharged by the prison authorities, the parole board or the governor of the State of Michigan.' "

The State, through the prosecuting attorney, filed objection to the first of these motions and stated:

"And it was also contended (Exhibit 25) that 'the defendant's claim that he has been imprisoned for a longer period than the maximum statutory term is not well founded,' citing *In re Doelle,* 323 Mich 241; *In re DeMeerleer,* 323 Mich 287."

Why did the original petitioners, Fay and Martin, enter the case and why are their contentions not answered?

The explanation is that on May 7, 1953, the petitioners were served with a *subpoena duces tecum,*

commanding them to appear before the defendant judge and give evidence in the case of People *v.* Wruble, on behalf of the defendant, and to bring with them the prison and parole files of defendant Wruble and Clifford LaFrance, Robert Swem, Elmer Dillon, Charles Kelly, Albert Viggers and Albert Powell.

The names just given are of persons who, after being sentenced to life imprisonment, were granted new trials and pleas accepted for lesser offenses, with sentences thereafter imposed, generally running for no more than the time already served on the life sentence. None of these cases has any connection whatever with that of Wruble save in the treatment of the situation by various trial judges and the parole of the individuals concerned with the knowledge and consent of the sentencing judge or his successor in office prior to decision of this Court in *In re Doelle,* 323 Mich 241; and *In re DeMeerleer,* 323 Mich 287, certiorari denied, *DeMeerleer* v. *Michigan,* 336 US 946 (69 S Ct 810, 93 L ed 1102).

After the original petition was filed in this Court, we issued an order to show cause why a writ of prohibition should not issue and stayed the operation of the *subpoenas duces tecum* during the pendency of the prohibition proceedings.

Decision in this case does not require a *seriatim* consideration of the questions stated in the briefs of the respective parties, because the controlling one is whether the action of the defendant judge was in effect a judicial invasion of the power of clemency of the executive, rather than the performance of a judicial function. In short, the essence of the issue presented is the true substance of the events which transpired since the original conviction and sentence. The procedure used or the form of proceedings employed to accomplish the results obtained have little or no bearing on the matter, there being

no specific question raised of violation of due process of law.   The crux of the matter is the validity of the verdict originally rendered in the Wruble trial.

The journal of the recorder's court is the official record of the proceedings of that court under the mandate of the statute.   See CL 1948, § 726.3 (Stat Ann § 27.3553).   The journal entry reads:

"The jury heretofore impaneled in this cause comes into court again, and in the presence of the defendants, retires to consult further upon their verdict, and being absent for a time, return into court, and having been inquired of as to their verdict, say upon their oaths aforesaid in the presence of the defendants that they find said defendants guilty as charged (Upon the request of counsel for the defense the jury is polled).

"It is hereby ordered by the court that said defendants be referred to the probation department until the fifth (5th) day of March, 1934.

"READ, CORRECTED AND SIGNED IN OPEN COURT."

The information filed against Wruble charged "murder" without specifying the degree, and the only intimation that first degree murder may have been charged is the statutory reference at the foot of the information, which reads:   "See 316 MPC 1931."[*]

That a general verdict is invalid where the single count of murder is laid in the information is discussed in *People* v. *Martin,* 316 Mich 669, in which the Court referred to the statute which requires a determination by the jury of the degree of murder. (Section 318 of the penal code, as amended by PA 1947, No 295, being CL 1948, § 750.318 [Stat Ann 1953 Cum Supp § 28.550].)   The situation here is analogous to that in *People* v. *Simon,* 324 Mich 450, where a conviction was reversed and the cause re-

---

[*] Michigan penal code, PA 1931, No 328, § 316 (CL 1948, § 750.316 [Stat Ann § 28.548]).—REPORTER.

manded for a new trial, this Court saying (pp 457, 458):

"However, the question, going to the validity of the verdict, is before us on the record and we therefore dispose of it. *Mitchell* v. *Reolds Farms Co.*, 255 Mich 240. In *People* v. *Little, supra* (305 Mich 482), we said that the statute requiring the verdict of a jury in a criminal case to be 'accepted and recorded by the court' (CL 1929, § 17130 [Stat Ann § 28.855])* was 'clearly designed to prevent' 'possible irregularities.' The instant case is an illustration. The journal entry of the verdict states that 'the jury * * * find the said respondents * * * guilty as charged (murder first degree) in manner and form as the said people have in their information in this cause charged.' The information charged murder without specifying the degree. Did the jury find the defendant guilty of murder in the first degree or 'guilty as charged'? From the record we cannot tell. If the latter, then the jury failed of its statutory duty to ascertain the degree (CL 1929, § 16710)† and the verdict would be fatally defective. *People* v. *Clark*, 155 Mich 647. Thus is demonstrated the wisdom of the statutory requirement that the verdict shall be accepted by the court."

The defendant judge, in setting aside in 1950 the *nunc pro tunc* order of 1948, said:

"For me to say that I recall what the language of the foreman was, of course, would be for me to state a falsehood. I mean I can't honestly say that I remember that the jury said 'guilty of murder in the first degree.' I believe that is what they said. I state that because I think I knew better than to take such a verdict of 'guilty as charged.' I knew the law then probably better than I do now but that conclusion that I would arrive at would be based

* CL 1948, § 763.2.—Reporter.
† See CL 1948, § 750.318, *supra.*—Reporter.

merely upon general practice, so for me to say that was the verdict of the jury through my own independent recollection would be asking one to do the impossible. I couldn't say that I recall this case definitely. I mean the verdict, because that would be almost an impossibility. We have the situation here where the Journal of the court and the short-book of the court both reflect the contention of the defendant that the verdict of the jury was 'guilty as charged.' That is, it appears in the Journal of the court, while the memorandum, which is the file, indicates that the verdict was 'guilty of murder in the first degree.' Based on the showing which was made a couple of years ago, the court entered an order *nunc pro tunc* amending the Journal and the short book to comply with the, or to coincide rather, with the entry on the file, without the taking of any testimony and upon the theory that the best evidence would probably be on the file, although that is contrary to the decisions of the Supreme Court in which they state that the court speaks only through its Journal. I have given this a great deal of thought and have very reluctantly arrived at the conclusion that it would be questionable whether the order of the court amending the Journal would stand in an appeal in the absence of any proof to the contrary, I mean any positive proof, and obviously when we search the entire record there is no definite proof for the court and there was no definite proof when the order was entered to the effect that that was the verdict. As I said, I am satisfied in my own mind and I am morally certain, based upon practice and custom that the verdict was one of guilty of murder in the first degree but to say that as a fact would be asking the court to say the impossible. So for that reason— As I say, I have considered this thing for a long time —For that reason, I have arrived at the conclusion that your motion to set aside the order heretofore entered amending the Journal and the short book is well taken and the court accordingly grants such motion setting aside the order."

The issue in the instant case therefore is the authority of the trial judge in 1950 to vacate corrections which he claims he erroneously made in 1948, and in granting Wruble a new trial.

That a trial judge has inherent power to grant leave to file a delayed motion for a new trial in a case that was heard before him and accept a subsequent plea and pronounce sentence cannot be disputed. This is an inherent judicial function, the exercise of which rests within the sound judicial discretion of a trial judge to so grant when justice requires. This Court has not, and will not, infringe upon this time-honored and necessary judicial prerogative, except for an abuse of judicial discretion.

It is argued by the people that the trial judge's order and sentence of December 5, 1950, were null and void under the authority of *People* v. *Fox,* 312 Mich 577 (168 ALR 703), and *People* v. *Freleigh,* 334 Mich 306. In the *Fox Case* the trial judge attempted, after commitment, to modify a validly imposed sentence of life imprisonment. In that instance this Court said (pp 581, 582):

"To hold with defendant under the circumstances of this case that the court has power to amend a sentence after the prisoner has served a part of it would infringe upon the exclusive power of the governor under the Constitution to commute sentence."*

The *Freleigh Case* involved a petition to review a partially-executed valid sentence. In sustaining the trial judge's order denying a review of the sentence under the provisions of PA 1951, No 159 (CLS 1952, § 769.14 [Stat Ann 1953 Cum Supp § 28.1085 (1)]), the Court held the amendatory act unconstitutional as an infringement upon the executive's exclusive power of pardon and commutation of sentence, citing the above quotation from the *Fox Case.*

---

* See Const 1908, art 6, § 9.—REPORTER.

These cases are distinguishable from the instant case which involves a claimed invalid and void verdict *ab initio*. In *In re Wall,* 330 Mich 430, which had to do with an excessive sentence, this Court said, in sustaining the order setting aside the sentence, that the trial court must take into consideration the amount of time a defendant has served under an unauthorized sentence in subsequently imposing a sentence authorized by statute.

The companion cases of *In re Doelle, supra,* and *In re DeMeerleer, supra,* which are said by the attorney general to be controlling of the situation here, are analyzed in the *Wall Case, supra,* as follows (pp 433, 434) :

"In the *Doelle Case* the petitioner was tried and convicted under an information charging, in separate counts, breaking and entering in the nighttime with intent to commit larceny and larceny in a store. The jury returned a verdict of guilty as charged, and sentence of not less than 7–1/2 nor more than 15 years was imposed for the offense of breaking and entering in the nighttime, without reference to the other count.   Subsequently the sentence was set aside, a new trial was granted, and Doelle was permitted to plead guilty to the offense of larceny from a store.   The plea was accepted and sentence was imposed.   Thereafter he challenged the validity of the sentence on the ground that he had served under the prior sentence longer than the maximum term (4 years) prescribed for the lesser offense.   It will be noted that the sentence which Doelle sought to avoid was imposed following a conviction after the original sentence had been vacated.   In determining the matter adversely to the petitioner's claim this Court called attention in its opinion to the fact that the matter of the punishment to be imposed following conviction of a crime is governed by applicable statutes.   In this connection *People* v. *Harwood,* 286 Mich 96, was cited, and it was said :

" 'The length of imprisonment for a specific felony is a matter for legislative determination and is not subject to judicial supervision unless the sentence imposed violates the provisions of the statutes.'

"In the *DeMeerleer Case* the situation was similar, and the holding in the *Doelle Case* was expressly followed. DeMeerleer's conviction of first-degree murder and sentence to life imprisonment were set aside, and on a new trial he was convicted of manslaughter. The sentence imposed was based on the second conviction, and this Court sustained it accordingly."

In the *Doelle Case* the majority of the Court was of the opinion that the matter of credit for time served was for the legislature to determine, and not the Court. The majority was, nevertheless, impressed by the authorities cited by Mr. Justice Butzel, and the reference in the annotations in 9 ALR 958, 959, where it appeared that in Iowa the decisions are based upon a statute (Iowa Code 1946, § 793.26) which provides for such deduction.

Mr. Justice Boyles, in concurring with the majority and with whom Mr. Justice North and Mr. Justice Dethmers agreed, said (pp 249, 250):

"I concur in the conclusion that it is within the discretion of a sentencing court to decide whether the time served by the defendant under a previous void conviction and sentence for a different offense should be taken into consideration in determining what sentence should be imposed after a subsequent plea of guilty to a different offense. The only present requirement as to the length of time to be served is that it must conform to the statutory limits. But I do not agree that this Court should suggest legislation which would make it mandatory upon a sentencing court to reduce a sentence by the length of time already served under a void conviction and previous sentence for a different offense. Mr. Justice Butzel suggests that 'possibly' the criminal code should be amended to that effect.

"We have often said that the desirability or the propriety of legislation is not for the Court. We should not depart from that rule."

The Court said in its majority opinion in the *Doelle Case* (p 249):

"In the last analysis, the law is not vindictive, and possibly the criminal code should be amended as was done in Iowa, so as to credit a prisoner on a new sentence with the time he has served under a void sentence. This also would bring uniformity in the practice. This, however, is a matter for the legislature, not for us."

After decisions in the *Doelle* and *DeMeerleer Cases,* the legislature enacted PA 1954, No 205 (CL 1948, § 769.11a [Stat Ann 1954 Cum Supp § 28.1083(1)]), which reads:

"Whenever any person has been heretofore or hereafter convicted of any crime within this State and has served any time upon a void sentence, the trial court, in imposing sentence upon conviction or acceptance of a plea of guilty based upon facts arising out of the earlier void conviction, may in imposing the sentence specifically grant or allow the defendant credit against and by reduction of the statutory maximum by the time already served by such defendant on the sentence imposed for the prior erroneous conviction. Failure of the corrections commission to carry out the terms of said sentence shall be cause for the issuance of a writ of habeas corpus to have the prisoner brought before the court for the taking of such further action as the court may again determine."

This expression of legislative intent as thus stated should be given full import. By its language this enactment was made retroactive. It applies to convictions and sentences "heretofore" served within the State and reposes discretion in the trial court to

grant credit for time served under a prior erroneous conviction. This statute was not in effect at the time that Judge Skillman credited Wruble in 1950 with the time previously served on the void sentence of 1934. He was nevertheless following the suggestion of the Court in the *Doelle Case* and anticipated the decision in the *Wall Case* and the action of the legislature. That being the fact, it must be held that the trial judge acted properly in considering the time spent by Wruble in prison under the void sentence.

For further light on this subject, we refer to the recently decided case of *Lewis* v. *Commonwealth*, 329 Mass 445 (108 NE2d 922, 35 ALR2d 1277). See, also, annotation on the:

"Right to credit for time served under erroneous or void sentence or invalid judgment of conviction necessitating new trial." 35 ALR2d 1283, superseding the annotation in 9 ALR 958.

After a consideration of the facts and circumstances of the instant case and the chain of events relating thereto, we are constrained to hold that the trial judge's action was in the performance of a well-recognized judicial function and did not infringe upon or invade the executive power of clemency.

An order will enter quashing the *subpoenas duces tecum* and denying further relief sought under the writs.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.

KELLY, J., did not sit.