PEOPLE *v.* CLARK.

1. HOMICIDE—MANSLAUGHTER—DEFINITION.

Manslaughter is a crime not defined by statute providing a penalty therefor, hence, definition must be found at common law (CL 1948, § 750.321).

2. SAME—MANSLAUGHTER—DEFINITION—MALICE.

Manslaughter is the unlawful killing of another person, without malice, express or implied (CL 1948, § 750.321).

3. SAME—MANSLAUGHTER—FELONIOUS INTENT.

An assault, resulting in a homicide, which is not committed with a deadly weapon, will be subject only to the charge of manslaughter unless the intent to commit the act be clearly shown to be felonious (CL 1948, § 750.321).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  26 Am Jur, Homicide § 17.
[3]  26 Am Jur, Homicide § 195.
[4]  26 Am Jur, Homicide §§ 22, 26.
[5]  26 Am Jur, Homicide §§ 17, 19, 22.
[6]  26 Am Jur, Homicide § 455.
[7]  26 Am Jur, Homicide § 554.
[8]  47 Am Jur, Searches and Seizures §§ 19, 54.
[9]  26 Am Jur, Homicide § 318; 20 Am Jur, Evidence § 394; 47 Am Jur, Searches and Seizures § 54.
[10]  26 Am Jur, Homicide §§ 311, 312, 328, 447.

4. SAME—MANSLAUGHTER—PROVOCATION.

Provocation to homicide is an important element in the situation only where the slaying was intentional, either express or implied, from the nature of the weapon used, as it may mitigate an intentional slaying and reduce the maximum criminal responsibility to manslaughter (CL 1948, § 750.321).

5. SAME—MANSLAUGHTER—PROVOCATION.

It is unnecessary to show provocation in order to sustain every conviction of manslaughter (CL 1948, § 750.321).

6. SAME—MANSLAUGHTER—EVIDENCE.

Evidence presented in record on appeal in prosecution for murder *held*, sufficient to sustain a conviction of manslaughter, even though no evidence was presented showing provocation (CL 1948, § 750.321).

7. SAME—INSTRUCTION—LESSER OFFENSES—MANSLAUGHTER—PROVOCATION—EVIDENCE.

Instruction to jury in prosecution for uxoricide that defendant could be found guilty of the lesser offense of manslaughter *held*, proper, where there was an absence of evidence of provocation (CL 1948, §§ 750.321, 768.32).

8. SEARCHES AND SEIZURES—ARREST.

The seizure of incriminating evidence incidental to a lawful arrest, based on probable cause, is proper, so long as the search and seizure is reasonable.

9. SAME—EVIDENCE—SELF-INCRIMINATION.

The seizure of a blood-stained shirt of defendant, worn by him when he was arrested by police for the slaying of his wife, without warning him that it would be used against him, *held*, not a violation of constitutional right against self-incrimination, since an arresting officer need not advise a defendant whose arrest is based upon probable cause that the seized evidence can be used against him (US Const, Am 5; CL 1948, § 750-.321).

10. HOMICIDE—MANSLAUGHTER—EVIDENCE.

Admission in evidence in prosecution of blood-stained shirt, worn. by defendant at time of his arrest for slaying his wife and seized when he was arrested, *held*, not error on appeal from conviction of manslaughter, where prosecution's claim that defendant had beaten his wife to death was denied by him (CL 1948, § 750.321).

Appeal from Recorder's Court of Detroit; Koscinski (Arthur J.), J. Submitted Division 1 October 3, 1966, at Detroit. (Docket No. 1,518.) Decided January 24, 1967. Leave to appeal denied by Supreme Court June 1, 1967. See 379 Mich 763.

Carl Clark was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo C. Marchand,* Assistant Prosecuting Attorney, for plaintiff.

*Norman P. Silverstein,* for defendant.

LESINSKI, C. J. A formal complaint and warrant were issued against defendant, Carl Clark, on April 12, 1965, charging him with the second degree murder of his wife, Dorothy Clark, in violation of CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549). After a formal examination in open court establishing probable cause, defendant was remanded for trial as charged in the complaint. Upon the conclusion of proofs, the trial court reduced the charge to manslaughter and submitted the case to the jury on the lesser offense. Defendant appeals the manslaughter conviction.

After leaving work on the morning of April 9, 1965, defendant, along with several of his coworkers, members of a car pool with whom he traveled to and from work, purchased some liquor and went to defendant's apartment to play poker. The poker game lasted until about 5 or 6 p.m. and the players left. Mrs. Clark, the deceased, was present in the home, but did not take part in the game, nor was she seen drinking.

Clifford Bennett, one of the men who took part in the poker game, met with other members of the car pool in front of defendant's apartment building about 11 p.m. on the night in question. Bennett, although he knew defendant was not scheduled to work the night of April 9, 1965, went to defendant's apartment to get some ice for a soda pop. Bennett testified defendant answered the door wearing only a T-shirt. In response to Bennett's request for ice, defendant merely waved his finger back and forth. While the door was open, this witness looked inside the apartment and saw the lower part of a nude female body lying across the bed. After the defendant closed the apartment door, the witness, Bennett, "stood there for a few minutes and * * * heard a couple of slapping sounds * * * like someone was hitting on something naked, a naked body." Bennett placed this incident as having taken place about 11:05 p.m. on the night of April 9, 1965. Other witnesses testified that they heard "moaning" or "crying sounds" coming from defendant's apartment between 8:15 and 11 p.m. on the night in question.

Defendant called the police about 12:02 a.m. on April 10, 1965. The police arrived at defendant's apartment and found Mrs. Clark unconscious on the bed. She was conveyed to Receiving hospital and was pronounced dead at 12:30 or 12:35 a.m. by an attending physician. An autopsy was performed which determined the cause of death to be hemorrhage and shock due to a blunt trauma to the abdomen. The outer skin of the abdomen was *not* broken. Medical testimony indicated that the injury *was not* caused by a sharp instrument. Defendant, in his statement to the police, gave conflicting stories. One story is that he and his wife had been alone all evening but he left for about 15 minutes to get some cigarettes. Upon his return to the apartment, he

found his wife unconscious and called the police. Another story is that he and the victim had been out to several bars and had returned about 11 p.m. He claimed that he immediately fell asleep and upon awakening he found himself completely undressed except for his T-shirt, and his wife lying on the floor beside the bed.

It is urged by defendant that the evidence will not support a verdict of manslaughter because the essential element of provocation was not offered in evidence. We do not agree.

Manslaughter is not defined by statute. CL 1948, § 750.321 (Stat Ann 1954 Rev § 28.553). Therefore, we must look to common law for a definition. In *People* v. *Droste* (1910), 160 Mich 66, 79, manslaughter was defined as "the unlawful killing of another without malice, express or implied." "Manslaughter is distinguished from murder in that the element of malice, express or implied, which is the very essence of murder is absent." 2 Gillespie, Michigan Criminal Law and Procedure (1st ed), § 1381, cited with approval in *People* v. *Grillo* (1948), 319 Mich 586, 590.

*Wellar* v. *People* (1874), 30 Mich 16, is instructive in showing what constitutes manslaughter. The Court stated at pp 19, 20:

"Manslaughter is a very serious felony, and may be punished severely. The discretionary punishment for murder in the second degree comes considerably short of the maximum punishment for manslaughter. But the distinction is a vital one, resting chiefly on the greater disregard of human life shown in the higher crime. And in determining whether a person who has killed another without meaning to kill him is guilty of murder or manslaughter, the nature and extent of the injury or wrong which was actually intended, must usually be of controlling importance.

"It is not necessary in all cases that one held for murder must have intended to take the life of the person he slays by his wrongful act. It is not always necessary that he must have intended a personal injury to such person. But it is necessary that the intent with which he acted shall be equivalent in legal character to a criminal purpose aimed against life. Generally the intent must have been to commit either a specific felony, or at least an act involving all the wickedness of a felony. And if the intent be directly to produce a bodily injury, it must be such an injury as may be expected to involve serious consequences, either periling life or leading to great bodily harm. There is no rule recognized as authority which will allow a conviction of murder where a fatal result was not intended, unless the injury intended was one of a very serious character which might naturally and commonly involve loss of life or grievous mischief. Every assault involves bodily harm. But any doctrine which would hold every assailant as a murderer where death follows his act, would be barbarous and unreasonable. * * *

"In general, it has been held that where the assault is not committed with a deadly weapon, the intent must be clearly felonious, or the death will subject only to the charge of manslaughter. The presumption arising from the character of the instrument of violence, is not conclusive in either way, but where such weapons are used as do not usually kill, the deadly intent ought to be left in no doubt. There are cases on record where death by beating and kicking has been held to warrant a verdict of murder, the murderous intent being found. But where there was no such intent the ruling has been otherwise."

Justice CAMPBELL, in *Wellar, supra,* also pointed out that provocation is only important in a situation where the slaying was intentional, either express or implied, from the nature of the weapon used. Provocation is important here because it effectively

mitigates the intentional slaying and reduces the maximum criminal responsibility to manslaughter.

Under certain circumstances, as here, the trier of fact may find that an assault which caused a death was committed without malice or a desire and intent to take human life. Thus, every manslaughter verdict does not warrant a showing of provocation to sustain a conviction thereon.

Upon a review of the record before us, we find ample evidence to support a conviction of manslaughter. It was, therefore, proper for the court to instruct the jury that defendant could be found guilty of the lesser offense, manslaughter. *People v. Milhem* (1957), 350 Mich 497; see, also, CL 1948, § 768.32 (Stat Ann 1954 Rev § 28.1055).

It is further claimed that a seizure by the police of a blood-stained shirt worn by defendant at the time of his arrest violated his constitutional rights because he was not warned that it would be used against him. A seizure of incriminating evidence incidental to a lawful arrest* is proper, so long as the search and seizure is reasonable. *People v. Gonzales* (1959), 356 Mich 247; *Mapp v. Ohio* (1961), 367 US 643 (81 S Ct 1684, 64 L ed 2d 1081, 84 ALR2d 933). The arresting officer need not advise such a defendant that the seized evidence can be used against him. Defendant has confused his privilege against self-incrimination, guaranteed by the Fifth Amendment to the United States Constitution, with those rights freeing him from an unreasonable search and seizure under the Fourth Amendment.

It is finally contended that the trial court erred in admitting in evidence the blood-stained shirt of defendant. "The general rule upon the admissibility of this kind of evidence is that it is admissible if

---

* The validity of the defendant's arrest is not questioned. The record shows that the arrest was based upon probable cause.

helpful in throwing light upon any material point in issue." *People* v. *Becker* (1942), 300 Mich 562, 565 (139 ALR 1171). The shirt was material to the prosecution's claim that defendant had inflicted the beating which caused the death of his wife. This piece of evidence was especially important since defendant denied beating his wife. The trial court did not err in the admission of the blood-stained shirt of defendant.

The judgment is affirmed.

J. H. GILLIS and HOLBROOK, JJ., concurred