PEOPLE v WILSON

Docket No. 30487. Submitted November 2, 1977, at Grand Rapids.—
Decided July 17, 1978. Leave to appeal applied for.

Ronald Wilson was convicted in Van Buren Circuit Court, Meyer
Warshawsky, J., of first-degree murder, Defendant appeals,
alleging error in the trial court's instructions to the jury. *Held:*
The trial court's instruction that the defendant could be
found guilty of first-degree murder if he "consciously intended
to commit the crime of robbery" erroneously allowed the jury
to convict the defendant of murder without a finding of malice,
Such a finding is tantamount to a finding of guilty of man-
slaughter. Therefore, the case is remanded for entry of a
judgment of conviction of manslaughter and for resentencing,
Reversed and remanded.

N. J. KAUFMAN, J., dissented. He would hold that an instruc-
tion on the element of malice is not necessary because of the
statute which makes a felony murder first-degree murder,
Because of the disagreement in the Court of Appeals on this
issue, however, Judge KAUFMAN feels that, to be safe, trial
courts should instruct juries on malice in felony-murder cases.

OPINION OF THE COURT

1. HOMICIDE—MURDER—FIRST-DEGREE MURDER—INSTRUCTIONS TO
JURY—MALICE.
An instruction to the jury in a trial for a murder which occurred
during a robbery that the defendant could be found guilty of
first-degree murder if he "consciously intended to commit the
crime of robbery" was erroneous because the instruction al-
lowed the jury to convict the defendant of murder without a
finding that he acted with malice.

2. HOMICIDE—FIRST-DEGREE MURDER—MALICE—INSTRUCTIONS TO
JURY—MANSLAUGHTER.
A jury verdict finding a defendant guilty of first-degree murder

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 40 Am Jur 2d, Homicide § 498 *et seq.*
[3] 40 Am Jur 2d, Homicide §§ 265, 267.
[4] 40 Am Jur 2d, Homicide § 72.

under instructions from the trial court which excluded the
element of malice is tantamount to a conviction of manslaugh-
ter; the remedy for the erroneous conviction, therefore, is a
remand for entry of a judgment of conviction of manslaughter
and for resentencing.

3. HOMICIDE—MALICE—USE OF DEADLY WEAPON—INFERENCE—PRE-
   SUMPTION.
   Malice is a permissible inference and not a presumption which a
   jury in a trial for homicide may draw from the use of a deadly
   weapon.

DISSENT BY N. J. KAUFMAN, J.

4. HOMICIDE—FELONY MURDER—FIRST-DEGREE MURDER—MALICE—
   STATUTES.
   *The first-degree murder statute makes first-degree murder of a
   killing which occurs during the perpetration of any of a num-
   ber of listed felonies; malice is imputed to the act of killing
   from the intent to commit the underlying felony (MCL 750.316;
   MSA 28.548).*

5. HOMICIDE—FELONY MURDER—MALICE—INSTRUCTIONS TO JURY.
   *The issue of whether or not a trial court must instruct the jury
   on malice in a felony murder case depends upon the facts in
   each case; it would be better if trial courts did instruct on
   malice in all felony murder cases.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Ward S. Ham-
lin, Jr.,* Prosecuting Attorney (by *Thomas C. Nel-
son,* Assistant Attorney General, Prosecuting At-
torneys Appellate Service), for the people.

*Daniel J. Wright,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH
and N. J. KAUFMAN, JJ.

M. F. CAVANAGH, J. A jury convicted defendant
of first-degree (felony) murder. MCL 750.316; MSA

28.548. He was sentenced to life imprisonment without parole, and appeals by right.

With respect to the element of malice in the jury instructions on first-degree murder, the court charged that defendant might be found guilty if defendant "consciously intended to commit the crime of robbery". Although this was error, *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), the appropriate remedy is not a reversal of defendant's conviction and a remand for retrial. The error in these instructions is that they allowed the jury to convict the defendant of murder without finding that he acted with malice. However, as was explained in *People v Clark,* 5 Mich App 672, 676; 147 NW2d 704, 706 (1967), *lv den,* 379 Mich 763 (1967), murder, absent malice, is manslaughter, " 'the unlawful killing of another without malice, express or implied.' 'Manslaughter is distinguished from murder in that the element of malice, express or implied, which is the very essence of murder is absent.' " (Citations omitted.) Thus, even if the jury here convicted the defendant without a finding of malice, their verdict, on these instructions, is tantamount to a conviction of manslaughter. *Cf. People v Jenkins,* 395 Mich 440, 442–443; 236 NW2d 503, 504 (1975).

Accordingly, defendant's conviction for first-degree murder is reversed and the case remanded for entry of a judgment of conviction of the lesser included offense of manslaughter and for resentencing. If, however, the prosecuting attorney is persuaded that the ends of justice would be better served, upon notification to the trial court before resentencing, the trial court shall vacate the judgment of conviction and grant a new trial on the charge that the defendant committed the crime of first-degree murder. See *People v Jenkins, supra,* 395 Mich at 442–443; 236 NW2d at 504.

Should the prosecutor elect to retry defendant

the jury should be instructed that malice is a permissible inference that the jury may draw from the use of a deadly weapon, and not a presumption. See *People v Martin,* 392 Mich 553, 561; 221 NW2d 336, 340 (1974). Also, upon proper request defendant shall be entitled to an instruction on the lesser included offense of robbery. MCL 750.530; MSA 28.798. *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). See *People v Anderson,* 62 Mich App 475, 482; 236 NW2d 620, 624 (1975).

R. M. MAHER, P. J., concurred.

N. J. KAUFMAN, J. *(dissenting).* Defendant was convicted of first-degree felony murder in accordance with MCL 750.316; MSA 28.548, after a jury trial. Sentenced to life imprisonment, defendant appeals as of right.

Defendant's conviction arose out of the shooting death of Arretta Lou Ingraham during a robbery at the Maple Street Grocery in South Haven on the afternoon of December 1, 1975. The prosecution's theory was that defendant and Lamar Langston were responsible for the robbery, that Langston first cased the store, and that defendant then entered the store, and committed the robbery which resulted in the shooting of Mrs. Ingraham while Langston waited outside.

At trial, the prosecutor produced three eyewitnesses, Barbara Sullivan, Gordon Hoag, and Wilbur Ingraham. Witness Sullivan testified that she was at the cash register when she noticed a man in the store, and that a scuffle started between Gordon Hoag and the man. She further noticed that a wine bottle was broken and Hoag going down. Witness Sullivan testified that the

man then took the money from the cash register,
having already taken Wilbur Ingraham's wallet.
At this point, witness Sullivan slipped out the
back door.

Witness Hoag testified that he was at the store
for hamburger buns and a bottle of wine when a
male pointed a pistol at him, saying "this is a stick
up". He recalled that something made him think
the gun wasn't loaded and that he tried to knock
the man's gun arm up with his left hand and to
swing the wine bottle with his right hand. How-
ever, he testified that he was then hit on the face,
causing him to fall to the floor. He further testified
that as he was crawling out of the store, he heard
a voice say "open the cash register" and "give me
the money". He remembered hearing the deceased
say "Wilbur, do something", and that he then
heard a pop like the sound of a gun going off.

Witness Ingraham testified that the man grab-
bed him by the neck, pointed a gun at his head,
announced a robbery and ordered the opening of
the cash register. He further testified that a strug-
gle then ensued between Hoag and the robber and
that the robber fired the gun and departed the
store after taking money from the cash register
and his billfold.

In its instructions to the jury, the trial court
said that the prosecutor had to prove each of the
following elements in order to convict defendant of
first degree murder:

"First, that Arretta Lou Ingraham died on or about
December 1, 1975, in the County of Van Buren; second,
that her death was caused by the defendant or that it
occurred as a direct result of the commission of the
crime of robbery; that is, that Arretta Lou Ingraham
died as a result of being shot during a robbery at her
grocery store; third, that at the time of the robbery

which caused the death of Arretta Lou Ingraham the defendant either intended to kill Arretta Lou Ingraham or that he consciously intended to commit the crime of robbery, or consciously created a very high degree of risk to another with the knowledge of its possible consequence. I should say probable consequence. Fourth, the fourth element is that the defendant caused the death without justification, excuse, or mitigation; fifth, that at the time of the gunshot which caused the death of Arretta Lou Ingraham the defendant was committing or assisting another in the commission of the crime of robbery."

The trial court also instructed on the elements of the underlying armed robbery and the included offense of second-degree murder. Regarding the element of malice, as it pertains to second-degree murder, the trial court stated:

"With reference to second degree murder, the intent or malice aforethought required for this degree of murder is often formed and executed suddenly in the heat of blood and without the premeditation necessary to first degree murder and without the murder period. The malice to kill may be actual or it may be implied from all the facts and circumstances connected with the killing which indicate the disposition or state of mind with which it is done. The intent to kill or malice for second degree murder may be implied where the actor actually intended to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm, thereby manifesting his extreme indifference to the value of human life. Where death has been shown to have resulted from the use of a deadly weapon, that is a weapon reasonably calculated and likely to produce death or serious injury from the manner in which it was used, malice may be presumed in the absence of proof to the contrary."

The court concluded its charge by instructing that the jury could reach one of three possible

verdicts: guilty of murder in the first degree; guilty of murder in the second degree; and not guilty.

The court then excused the jury and asked if the parties were satisfied with the instructions:

"THE COURT: I will ask the People are the People satisfied with the Court's charge to the jury?

"MR. WILLIS *[Assistant Prosecutor]:* People are satisfied, your Honor.

"THE COURT: I will ask the defendant, is the defendant satisfied with the Court's charge to the jury?

"MR. SZYMANSKI *[Defense Counsel]:* Your Honor, the defendant is not satisfied.

"THE COURT: I will ask the defendant what elements or grounds disturb him?

"MR. SZYMANSKI: May it please the Court, primarily our first would be the fact that armed robbery alone was not given the jury as a possible alternative, that they could find either guilty of first degree murder, of second degree murder, or guilty of armed robbery, or not guilty.

\* \* \*

"THE COURT: You ask that the Court go in and address itself to the charge of armed robbery?

"MR. SZYMANSKI: Yes, sir.

\* \* \*

"THE COURT: The testimony showed that the defendant, if believable, was in the store with a gun. The testimony also showed, and there was no rebutting that, that one shot was fired. I am merely commenting on the testimony. That although the question of the direction of the bullet, vis-a-vis the path through the body may leave some room for explanation, it isn't such that I believe the question of felony murder can be excluded.

"Now, if there is a felony murder, I submit first under the facts of this case, there should not be a charge of armed robbery. Second, under the rules, you do not charge armed robbery as a lesser included offense of felony murder.

"Do you have another one?

"MR. SZYMANSKI: Yes. The other one—there are two—I'm sorry.

"THE COURT: Yes.

"MR. SZYMANSKI: The other instruction that I would request is an instruction to manslaughter. And my basis for requesting that instruction is that the testimony does show· that there was a scuffle between the defendant and Mr. Hoag, the witness Mr. Hoag, and very shortly after this scuffle is when the shot occurred or the shot was heard. And for that reason we feel that it could well have been in the heat of passion of the fight that the killing occurred.

\* \* \*

"THE COURT: All right. I am going to deny that instruction also. I do it based on the state of the law, and I have no basis for charging manslaughter in an armed robbery felony murder. Second, I believe in addition to this state of the law, the facts do not warrant that kind of that particular charge in this particular case."

While defendant raises three grounds of error, I will address myself to the last one first. Did the trial court err reversibly by failing to instruct the jury that malice is an essential· element of first-degree murder?[1]

The classic definition of first-degree murder as embodied in MCL 750.316; MSA 28.548 and its predecessors was given sanction by the Supreme Court early in our jurisprudential history. In *People v Potter,* 5 Mich 1, 3 (1858), the defense asked for the charge:

" \* \* \* that, if the government sought to have the

---

[1] It must be noted that felony-murder itself is a doctrine created by the legal profession. *Genesis* 4:8: "And Cain talked with Abel his brother: and it came to pass, when they were in the field, that Cain rose up against Abel his brother, and slew him." That passage undoubtedly records the first murder case in history. However, we can find no guidelines from this episode as Cain was simply left to face his maker.

jury convict the prisoner of murder of the first degree, the burden of proof was on the government, to show that the murder was committed in the perpetration, or in the attempt to perpetrate, arson, rape, robbery, or burglary, or by poison, or by lying in wait; or to prove such facts in addition to the act of killing as made the killing murder of the first degree."

The trial court refused this request. The Supreme Court reversed the subsequent conviction, concluding:

"Now, malice aforethought is either express or implied, and there can be no case of murder in the first degree, except when committed in the perpetration, or attempt to perpetrate, arson, rape, robbery, burglary, or when there does not exist *express* malice; while, in case of murder in the second degree, the malice is generally, if not universally, *implied."* (Emphasis in original.) 5 Mich at 9.

Chief Justice MARTIN's formulation of first-degree murder, which excluded felony murder from the malice requirement, was reaffirmed by Justice CAMPBELL in *People v Scott,* 6 Mich 287, 294 (1859):

"Except in the cases expressly named in the statute, murder in the first degree requires the existence of a deliberate intention to take life; and any slaying in which a jury should find either the absence of deliberation, or that the intent was to commit another and a lesser injury, must be either murder in the second degree, or one of the lighter grades of homicide. Accordingly, in the case of Potter, where the court below had held that the jury could convict of murder in the first degree upon any proof which would establish murder at common law, we reversed the decision, and held that murder in the first degree, *except in the specified cases,* could only be made out by proof of express malice, and

a deliberate design against life itself." (Emphasis supplied.)

By 1870, trial courts were instructing juries based on the *Potter* formulation. The following charge to the jury is from *People v Vanderpool,* 1 Mich Nisi Prius 264, 268–269 (1870):

"The definition of murder, under our statute, remains the same as at common law; and all that our statute does is to divide it into classes; and I charge you, Gentlemen, that in order to find a person guilty of murder in the first degree, you must find that he killed the deceased either by poison, or lying in wait, or, that it was some other kind of wilful, deliberate, and premeditated killing; *or that the killing was done while the accused was engaged in the perpetration or attempt to perpetrate one or more of the four offenses mentioned in the statute; to-wit, arson, rape, robbery, or burglary.*" (Emphasis supplied.)

In *Wellar v People,* 30 Mich 16, 19-20 (1874), a nonfelony murder, Justice CAMPBELL stated the following in a discussion on the necessity of proof of malice:

"But it is necessary that the intent with which he acted shall be equivalent in legal character to a criminal purpose aimed against life. Generally the intent must have been to commit either a specific *felony,* or at least an act involving all the wickedness of a felony. And if the intent be directly to produce a bodily injury, it must be such an injury as may be expected to involve serious consequences, either periling life or leading to great bodily harm. There is no rule recognized as authority which will allow a conviction of murder where a fatal result was not intended, unless the injury intended was one of a very serious character which might naturally and commonly involve loss of life, or grievous mischief. Every assault involves bodily harm. But any doctrine which would hold every assailant as a

murder where death follows his act, would be barbarous and unreasonable." (Emphasis supplied.)

The Supreme Court certainly recognized the felony murder doctrine in *People v Utter,* 217 Mich 74, 85; 185 NW 830 (1921), when it sustained the following instruction:

" 'If it is true as the people claim in this case that he assisted in taking the money from the body that lay there and that later it was divided up between the parties with his knowledge and consent, and that this man was struck and given a mortal wound and died from the effects of it, and that mortal wound was given at the hands of either of the three, if you are satisfied beyond a reasonable doubt of those elements it is your duty to convict the respondent in this case of murder in the first degree. If you are not satisfied beyond a reasonable doubt of his connection with this so far as entering into an agreement to go there with them and assist in its execution your verdict in this case will be not guilty.' "

No instruction as to malice was given.

*Utter* was followed three years later by *People v Treichel,* 229 Mich 303, 307; 200 NW 950 (1924), a statutory felony murder case, in which the Supreme Court concluded:

"While impaneling the jury, the trial judge stated that, under the information, a conviction might be had for murder in the first or second degree or manslaughter, and at the close of the trial so instructed the jury.

"Counsel for defendants strenuously insist this was error, claiming the information charged murder in the first degree, and it was the duty of the trial judge, under the evidence and their written request, to instruct the jury to confine their deliberations to such degree and, if unable to convict of murder in the first degree, they must find defendants not guilty. Counsel claim they are supported in taking this position by

many decisions of this court. In this they are in error.
The information charged murder without specifying
method, or means, or circumstances, and, under the
information, murder in either degree, or manslaughter,
might be found. This court has repeatedly held, where
the charge as laid includes murder in the first degree,
and the proofs establish such degree, and no lesser
degree, it is not error for the court to instruct the jury
that, in order to convict, murder in the first degree
must be found. But this court has not held, under a
charge like here laid, the court *must* instruct the jury
to find murder in the first degree or acquit. Whether
such an instruction may be given or not depends upon
the evidence. While the statute constitutes murder
committed in the *perpetration of burglary* as in the first
degree, it does not exclude all lesser degrees if the
evidence warrants." (First emphasis in original; second
emphasis supplied.)

In *People v Hearn,* 354 Mich 468, 470–471; 93
NW2d 302 (1958), the Supreme Court specifically
upheld the ruling of *Utter* in holding:

"An examination of the court's charge to the jury
discloses that the jury was completely and properly
instructed and defendant fully protected, as shown by
the following instruction:
" 'Now, the defense in this case is marijuana and
alcohol, either one or both, or a combination. The
defense claims that because of its use that the respon-
dents in this case did not know what they were doing or
why they were doing it and consequently could not
form an intent to rob and didn't know the difference
between right and wrong. Now, these are questions for
you to decide upon after you reach the jury room. * * *
" 'If their mental faculties were so far overcome by
the use of marijuana and liquor that they were not
conscious of what they were doing, or if they knew
what they were doing but did not know why they were
doing it, or that their actions and the means they were
using were naturally adapted to produce death, then
they had not the capacity to entertain the intent and,

in such case, intent could not be inferred from their actions. * * * This question of intent and common purpose to rob a gasoline station is a question of fact for you to determine after considering the acts before the commission of the crime and afterwards, and bearing upon the question of whether or not they knew what they were doing. Take into consideration all the testimony bearing upon that question. * * *

" 'You cannot convict unless you find intent to commit the crime of robbery. You don't have to find intent to kill, but you do have to find intent to commit the crime of robbery. If you don't find that intent, of course the respondents are not guilty. If you do find it, then there is another question for you to pass on. You must find intent to commit the crime of robbery, felonious intent, before you can convict of first-degree murder.' "

A similar ruling was made by the Supreme Court in *People v Dupuis*, 371 Mich 395, 402; 124 NW2d 242 (1963):

"Thus not only the defendant but, equally, the jury was instructed and informed in plain and unmistakeable language that the charge against the defendants was murder in the first degree. Thus is this case to be distinguished from *Attorney General v. Recorder's Judge*, [341 Mich 461; 67 NW2d 708 (1954)], in which this Court said that the information contained 'only intimation that first-degree murder may have been charged.' Here the information did not merely intimate that it may have been, but, on the contrary, it expressly charged murder committed in violation of the statutory provision, read to the jury, constituting murder committed in the perpetration of a robbery murder in the first degree. By announcement of a verdict of guilty of that charge, the jury did 'ascertain in their verdict' that defendant was guilty of murder in the first degree.

"The verdict was valid. The motion for new trial was properly denied. Affirmed."

The next major case in this area, *People v*

*Carter,* 387 Mich 397; 197 NW2d 57 (1972), causes some confusion. The Supreme Court had to decide, where an enumerated felony was the basis of a felony murder charge, whether instructions on lesser included offenses must be given. The Supreme Court was also confronted again with the question of instructing on malice:

"In a criminal case, if there is a request to charge as to a lesser included offense, but there is no evidence of such a lesser included offense, or the facts are such that the court or the jury would be obliged to conclude that the defendant was guilty of the offense charged or not guilty, no charge as to a lesser included offense need be given.

"But if the evidence is subject to different interpretations that would justify a finding of a lesser offense, a charge as to such lesser offense, especially if one is requested, should be given.

"In this case, it is maintained that, even though the criminals were engaged in felonious acts, they did not act with malice, either express or implied. The evidence is that none of the physical injuries Osbeck received would have contributed to his death. The conduct of the felons in opening the trunk of Osbeck's car after the bank robbery can be accounted for on the theory that they believed him to be alive and were giving him a chance to escape. Since all of the evidence is circumstantial, these were matters to be considered by the jury under a proper charge as to manslaughter, as well as first and second-degree murder." 387 Mich 422–423. [Footnotes omitted.]

It should be noted that the *Carter* case was based solely on circumstantial evidence. There really was no proof that defendant Carter was involved in any of the enumerated felonies in the statute; therefore, to convict of murder, the prosecution would have to prove malice as in any other nonfelony murder case.

This Court's best explication of the principles set forth above is in *People v Morrin,* 31 Mich App 301, 310–311; 187 NW2d 434 (1971), *lv den,* 385 Mich 775 (1971), where Judge (now Justice) Levin stated:

"A person who kills another is guilty of the crime of murder if the homicide is committed with malice aforethought. Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter. The intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm. (The common-law felony-murder rule is an example of implied intent or implied malice aforethought.)[9]" (Other footnotes omitted.)

"[9] Perkins on Criminal Law (2d ed), p 37; Moreland, Law of Homicide, pp 14, 42; Clark and Marshall, Crimes, (6th ed), § 10.07.

"In Michigan certain felony murders are by statute murder of the first degree. MCLA § 750.316 (Stat Ann 1954 Rev § 28.548.)"

However, after a discussion of many of the same cases mentioned in this opinion, Judge Walsh in *People v Fountain,* 71 Mich App 491, 505–506; 248 NW2d 589 (1976), concluded:

"From the foregoing discussion we are led to the conclusion that Michigan has neither a statutory felony-murder doctrine nor a common law felony-murder doctrine. Malice is not, in this state, imputed to an act of killing from the intent to commit an underlying felony. Although malice may be inferred from the nature of the underlying felony and the circumstances surrounding its commission, the presence or absence of malice in each case remains a question for jury determination.

"Insofar as the trial court's instructions removed the essential element of malice from the jury's considera-

tion, they were erroneous. The defendant's conviction is reversed and the case is remanded for a new trial."

With this interpretation, I cannot agree. The statute[2] is still on the books, the law has not been changed.

Clearly, there is great conflict among members of this Court regarding the issue of felony murder. The opposing viewpoint has been eloquently set forth by Judge WALSH in *People v Fountain, supra,* by Judge RILEY in her dissenting opinion in *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), and by the majority in *People v Wright,* 80 Mich App 172; 262 NW2d 917 (1977). On the other hand, advocates of the felony murder doctrine have endorsed Judge BASHARA's majority opinion in *People v Till, supra.* I would note that all of the above opinions were well-reasoned and well-written. Until the Supreme Court passes on this issue, our legal discord will continue. As noted by Circuit Judge Brown in *People v Vanderpool, supra* at 278:

"Solomon's knowledge of the power of maternal love enabled him to judge righteously in determining to which of the two [women] the living child belonged, and that knowledge was an infallible criterion of truth. *Bible,* 1 *Kings,* 3 ch. 16–28V. The nineteenth century, however, has no Solomons".

---

[2] When Michigan was admitted as a state in 1837, the Pennsylvania statute on murder was adopted verbatim. In 1846, the statute was amended to change the penalty from death to mandatory life imprisonment. The provisions of the statute dealing with wilful, deliberate, and premeditated murder have remained unchanged. In 1969, "larceny of any kind, extortion, and kidnapping" were added to the felony-murder provision. It may be surmised that the 1969 amendment was a direct result of holdings that the felony-murder doctrine was limited in Michigan to the enumerated felonies, where various courts had ruled that a death during the perpetration of a kidnapping and larceny from a building did not constitute felony murder. The 1969 amendment is a good indication of legislative intent.

When it comes to felony murder, neither does the twentieth century.

Even the new standard criminal jury instructions do not solve the quandry in which the Court of Appeals finds itself. The commentary to the malice instructions notes:

"In summary, jury instructions in Michigan, as in many other jurisdictions, have suffered from the use of legal terms which are imprecise and ambiguous. One such term is 'malice aforethought,' which, since it has been interpreted to be dependent on neither ill will nor reflection over time, has little meaning and tends to confuse juries. Initially, homicide was presumed to be murder. It was later established that malice is not a presumption, but a permissible inference. An interesting side effect was that in restating the rule, the Michigan Supreme Court shifted the burden to the prosecution to disprove justification, excuse and mitigation. Unlike other defenses, therefore, justification, excuse and mitigation became elements of the crime. Because the intent to kill may be implied by the circumstances, jurors may be required to determine the actor's state of mind by inference. Currently used instructions, however, tend to be misleading in that the juror may interpret them to mean that commission of the act can itself supply the required evidence of state of mind, rather than that the juror must himself determine what state of mind he believed the defendant entertained at the time of the act.

"Except for *felony-murder,* the concept of implied intent is applicable only to wanton act murder. Three factors must be considered to determine whether a wanton act homicide is murder: whether the actor could reasonably foresee a certain degree of risk; whether he acted consciously and purposefully; and whether he was aware at the time of the probable consequences of his act. The degree of risk required is a 'very high degree of risk,' as opposed to a 'high degree of risk,' which will suffice for manslaughter. Michigan's foreseeability of consequences standard permits the defense of dimin-

ished capacity even in a wanton act case. [Emphasis added.]

"Michigan has held that murder is not a specific intent crime. However, with the exception of an early case which predated the emergence of the distinction between general and specific intent (a case which has been viewed as a policy decision), the courts have not explained what this means. Historically, murder of the first degree includes felony-murder as well as wilful, deliberate and premeditated murder, and second-degree murder includes the wanton act. Thus, the statement that murder is not a specific intent crime would be true if by 'specific intent' the courts mean intent *to kill,* as neither felony-murder nor wanton act murder requires the intent to kill. First-degree nonfelony murder is a specific intent crime. *Garcia, supra [People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)]." CJI 16-98-16-99.

"The Committee concluded that first-degree murder, other than felony-murder, requires an actual intent to kill." CJI 16-101.

"The felony-murder rule may well linger on in the United States for many years in a morass of judicial interpretations and statutes because of the way it developed in this country. There are several types of statutes dealing with the felony-murder doctrine. There are thirteen states which classify homicides committed in the perpetration or attempted perpetration of arson, rape, robbery and burglary as murder in the first degree or as murder where murder is not divided into degrees. Statutes in several states add the offenses of mayhem, kidnapping and larceny. Some statutes codify the common law, making the statute apply to 'any felony.' The vast majority of states have adopted some form of felony-murder statute." CJI 16-111 (Footnotes omitted.)

Additionally, proposed CJI 16:2:04 provides:

"(1) The defendant is charged with the crime of murder of the first degree. The law, as it applies to this case, states that all wilful, deliberate and premeditated murder or all murder which shall be committed during

and as a result of the committing or attempting to commit [arson / rape / robbery / larceny / burglary / extortion / kidnapping] shall be murder of the first degree. The defendant pleads not guilty.

"(2) There are two degrees of murder, first degree and second degree, and you will be instructed as to both. [Murder of either degree is the killing of one person by another with malice. Malice is a term with a special meaning in the law. Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not justify, excuse or lessen the crime.][1] * * *

"USE NOTE: 1. Some authorities believe that the bracketed material concerning malice should be omitted."

It is obvious by the language of Use Note 1 that the Committee itself was not in agreement as to whether or not an instruction on malice should always be given in a charge.

I believe that until the Supreme Court authoritatively decides this issue, each case is *sui generis,* and the facts of each case must be reviewed separately.[3] The instructions on felony murder were proper in this case.

I would agree with Judge BASHARA in *People v Till, supra,* that to be safe, it would be better if trial courts instructed on malice in felony-murder cases.

---

[3] The following notation from the proposed standard criminal jury instructions at 16-79 bears remembering:

"Judge Cardozo, in discussing the distinction between first- and second-degree murder, stated: 'The present distinction is so obscure that no jury hearing it for the first time can fairly be expected to assimilate and understand it. I am not at all sure that I understand it myself after trying to apply it for many years and after diligent study of what has been written in the books.' Cardozo, *Law and Literature* (Harcourt, Brace and Co ed 1931), pp 100–101."

This Court finds itself in much the same situation as Mr. Justice Cardozo.

Defendant's other allegations of error do not require reversal of his conviction.

I would affirm defendant's conviction.