## STATE v. VEY.

Unless it is unavoidable, testimony to prove the voluntary character and admissibility of a confession should not be offered in the presence of the jury, and the court should direct that such testimony should be introduced in the jury's absence whether requested by either party or not.

Where objections were interposed to a confession when it was offered, but no motion was made to have it stricken out or withdrawn, its competency depended on the evidence as it stood when the confession was received.

A month prior to making a confession the sheriff told accused while in custody that he had "better give up"; that it would be easier for him. Thereafter accused sent for the sheriff, and stated that he wanted to tell everything, that he could not "stand it any longer," whereupon the sheriff, without further comment, stated that he would send for the state's attorney, to whom accused admitted that he had shot deceased, and asked the sheriff to keep him from being hung. **Held,** that the confession was voluntary and admissible.

In a prosecution for homicide, defendant's admissions connecting

him with the offense having been properly admitted, the court did not err in admitting a coat and handkerchief found by the sheriff at the place to which defendant directed him.

Admission of a letter written by accused while in jail to his father and mother, and delivered unsealed to the sheriff for mailing, containing an implied admission of his participation in the crime with which he was charged, was not objectionable as violating Const. art. 6, § 9, providing that no person shall be compelled to be a witness against himself.

Where, in a prosecution for homicide, accused was either guilty of murder or was not guilty of any offense, a request to charge that the jury might find him guilty of any minor offense necessarily included in the offense of murder was properly refused as improper in form and as unauthorized by the evidence.

FULLER, P. J., dissenting.

(Opinion filed, January 7, 1908.)

Error to Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Herman Edward Vey was convicted of murder, and he brings error.  Affirmed.

*Simons & Bradford* and *Preston & Hannett,* for plaintiff in error.  *S. W. Clark, Atty. Gen.,* and *T. J. Spangler, State's Atty.,* for the State.

HANEY, J.  Having been convicted of murder and sentenced to imprisonment for life, defendant brought the record of such conviction to this court for review by writ of error.

It was charged that the defendant killed an unknown man in the city of Mitchell on July 16,, 1906, either with a premeditated design to effect the death of the person killed, or without such design while committing the crime of robbery.  The state was permitted, after having introduced evidence strongly tending to establish the commission of the alleged crime, and tending in some degree, to connect the defendant with its commission, to show an oral confession made by the defendant in the presence of the sheriff and state's attorney.  Before considering the competency of this confession, a matter of procedure deserves passing notice. Unless it is unavoidable, testimony relating to an alleged confession should never be heard by the jury before its admissibility has been determined.  Of course, if the alleged confession be found to be admissible, failure to exclude the jury during the prelim-

inary inquiry touching its competency will not be reversible error, as the circumstances leading up to and attending a competent confession are to be considered by the jury in determing its weight as evidence. If, however, after such inquiry has proceeded with the jury present, the alleged confession be found to be inadmissible, it is extremely doubtful whether the effect of the preliminary inquiry can ever be so far removed from the minds of the jurors as to insure a fair and impartial trial. It is therefore in the interest of the state rather than of the defendant that the preliminary inquiry should proceed in the absence of the jury, and the court should so direct whether requested or not by either party.

Timely and proper objections were interposed when the confession was offered, but no motion was made to have it stricken out or withdrawn from the jury. Its competency, therefore, depends on the evidence as it stood when the confession was received. As to its competency and the confession itself, the sheriff testified substantially as follows: "Q. You may state, Mr. Cook, whether in that talk you had with him any reference was made to this alleged crime? A. Yes, sir. Q. Now, I will ask you, Mr. Cook, whether that talk was voluntarily made by the defendant? A. It was. The court: You can cross-examine him. By Mr. Simons: At the time this conversation was had I did not say to Mr. Vey that I would do my part in taking care of him if he would make such statement. I did not say to him at that time that I would do all I could for him. I did not say that I would do what I could to make his sentence light if he made a confession. I did not at that time tell Mr. Vey that it would be easier for him if he confessed. I did not at that time make any statement to Mr. Vey in which I said I would do what I could to help him if he made such statement. By the Court: Q. You may state whether you made any promise or any threat to the defendant regarding these statements? A. No, sir. Q. Held out any inducement to him? A. No, sir. By Mr. Spangler: Q. Mr. Cook, where and when was this statement made? A. He sent for me to come down to the jail, that he was nearly crazy, that he couldn't stand it any longer. I went down in the jail and he said: 'I want to tell you—' He says: 'I want to tell you every-

thing. I can't stand it much longer.' 'Well,' I said, 'all right. I will send for Mr. Spangler, and you can make your statement to him if you want to.' He said, 'All right.' I telephoned for Mr. Spangler, and he couldn't come over then. This was in the morning. He said he would be over in the afternoon, and he came over and I brought Mr. Vey up in the office. Q. State just what Mr. Vey said when he got up in the office. A. He says: 'I want to tell you all of this. I can't stand it any longer. I shot that man. I am a poor innocent boy, and I want you to keep me from being hung.' He made that statement once or twice right there in the office before Mr. Spangler and myself. He said: 'I shot twice above him, and the third time I said to him, "This is your last chance." I fired, and he dropped.' He said, 'Mr. Spangler, help me what you can. It will break my poor mother's heart'; and some other conversation. I don't just remember now. I said to him, 'Then you shot this man?' And he said, 'Yes, I shot him.' I says to him, 'Is that the gun you shot him with?' He said, 'It is.' Perhaps there was something else said there, but I can't remember it just now, unless you can call to my mind some facts. Q. Do you remember of his being asked why he shot him? A. Why; he said he was sore at him because he had got the money from the other fellow. He said, 'I am sorry that I did it.' " Nothing was disclosed by this evidence to justify the inference that defendant's confession "resulted from anything calculated to induce the fabrication of a false statement concerning his participation in the crime." (State v. Landers, 114 N. W. 717); nothing to justify the conclusion that his statements were not prompted by the spirit of truthfulness; nothing to indicate that he was impelled by any influence other than the consciousness of his own guilt. On the contrary, the language and manner of the accused lead irresistibly to the conclusion that his conduct was not the result of any external influence. The fact that he was in custody charged with the offense confessed was to be considered, but, independently of statutory provisions, that circumstance alone did not render the confession incompetent, if it was, in fact, made voluntarily within the legal meaning of the term. 3 Ency. of Ev. 305. Clearly the court did not err in receiving the confes-

sion on the evidence as it stood when the confession was admitted. Subsequently the regular cross-examination of the sheriff disclosed that about one month prior to the making of the confession he had "urged" the defendant "to make a confession," saying to him; "Now, Vey, you had better give this all up. It will be easier for you." Certainly no one will seriously contend that a ruling on the admission of evidence can be rendered erroneous by testimony not elicited when the ruling was made. Nevertheless, as it is contended that other confessions or admissions were erroneously received because of the sheriff's conversation with the accused, the effect of such conversation will be considered as if it had been disclosed by the testimony before the principal confession was admitted. Taking, then, a view more favorable to the defendant than the record requires, the facts may be stated thus: A man shown to have been in the company of tramps when and where the alleged crime was committed, presumably of ordinary intelligence, confined in a county jail among strangers awaiting trial on the charge of murder, to whom the sheriff one month previously had said: "Now, Vey, you had better give this all up. It will be easier for you"—without other solicitation or suggestion, requests an opportunity to make, and in the manner detailed by the sheriff makes, the statement disclosed by the sheriff's testimony. No threats were employed. No attempt made to intimidate or deceive accused. There was nothing upon which to base any objection, except the language of the sheriff spoken more than a month before the confession was made. Doubtless numerous cases may be found wherein language of similar import has been regarded as sufficient to exclude the alleged confession, on the theory that an implied promise on the part of an officer in charge of one accused of crime is calculated to induce statements which may or may not be truthful. But that is not the final test. Different minds may be differently affected by the same external influence. No two extrajudicial confessions were ever attended by precisely the same circumstances. Nothing, therefore, would be gained by an extended review of adjudged cases; the fundamental principles governing the subject being well established. Judicial trials should be conducted for the purpose of ascertaining the truth. All

rules of evidence are intended to subserve that purpose. Could the trial judge know the real fact, he would accept or reject the confession according as it was prompted or not by the spirit of truthfulness. But, such knowledge being impossible, necessity must furnish a rule which is the nearest practicable approximation to that of abstract justice and reason. So it has often been said the real question in every case is whether or not the confessing mind was influenced in a way to create doubt of the truth of the confession. I Bishop, New Crim. Proc. §§ 1221,1223. If received, the question of its truthfulness, its weight as evidence, is still open to the consideration of the jury the same as that of other competent evidence, but the law requires, as a condition precedent to its admission, a decision by the trial judge to the effect that it does not appear to have resulted from any external influence calculated to induce the fabrication of a false statement, and such decision should not be reversed by an appellate tribunal, unless clearly erroneous. Were the words of the sheriff in this case calculated to induce an untruthful admission of guilt a month after they were spoken? Possibly a person of tender years or exceptionally weak intellect might have understood the sheriff's language to imply a promise of immunity or assistance upon which he was justified in relying, but can it be believed that such would be its effect upon a grown man of ordinary intelligence and judgment having an entire month for deliberation? With an opportunity to judge of defendant's apparent age and intelligence, the learned circuit court should be presumed to have answered this inquiry correctly. But, conceding that the sheriff's conversation with the accused was calculated to induce a false admission of guilt, the confession was not incompetent, if, in fact, it was not the result of such conversation, and it affirmatively appears that it was not. As heretofore suggested, the conduct of the defendant, his manner, language, and the circumstances attending his confession are wholly inconsistent with the theory that he was acting under the influence of the sheriff's advice; the state of his mind being clearly indicated by his own words: "I want to tell you everything. I can't stand it any longer." If the real question be whether or not defendant's mind was influenced in a way to create

doubt of the truth of his confession, the doubt should be a reasonable one, fairly and naturally arising from a consideration of all the relevant facts, and not mere possible or imaginary doubt; otherwise no confession would ever be admissible. In view of all the facts disclosed by the record in this court and the presumptions which must be indulged, no reasonable doubt exists as to the competency of this confession, and we are compelled to conclude that the court did not err in admitting it. For the reasons stated, the confessions or admissions made to the deputy sheriff were properly admitted; no reason for their exclusion having been suggested or being discernible other than the alleged effect of the sheriff's advice, heretofore considered.

Defendant's confession and admissions having been properly admitted, there was no error in admitting a certain coat and handkerchief found by the sheriff at a place to which he was directed by the defendant.

It is contended the court erred in admitting a letter written by the defendant while in jail, addressed to his father and mother, and delivered unsealed to the sheriff for mailing, wherein there was an implied admission of his participation in the crime with which he was charged, over defendant's objection that "no proper foundation has been laid," that "it is incompetent, immaterial, and in no way tending to blind the defendant." That the letter was written by the defendant clearly appeared. That it tended to establish defendant's participation in the alleged crime is apparent from its contents. So it is difficult to understand why defendant's objections, as stated in the record, were not properly overruled. But, assuming such objections presented, the contention now urged, namely, that, by reason of the letters's retention and use in evidence, defendant was compelled to give evidence against himself in violation of the constitutional inhibition (Const. S. D. art. 6, § 9), such contention is clearly untenable. Papers and other articles voluntarily produced by the accused or taken from his room in his absence and without his knowledge may be put in evidence against him without violating his constitutional rights, as he is not thereby compelled to give evidence against himself. 12 Cyc. 401. It has been held: "If a prisoner, while confined in jail

charged with a criminal offense, write a letter in which incriminating admissions are made, and give it to the sheriff to mail, and the sheriff open and keep the letter, it is admissible in evidence against the writer, notwithstanding the manner in which it was obtained." Sanders v. State, 113 Ga. 267, 38 S. E. 841. If this be so, certainly it is not erroneous to admit an unsealed letter obtained in the same manner.

Finally, it is contended the court erred in refusing to charge the jury as requested by the defendant. The only foundation for this contention found in the record is the following statement: "Before the jury had retired to consider the evidence, the defendant requested the court in writing to charge the jury that they may find the defendant guilty of any minor offense necessarily included in the offense of murder. (Request refused because not presented in time. Defendant excepts.)" If, for any reason, notwithstanding the one assigned by the trial judge, this request was properly denied, the judgment should not be reversed. At least two such reasons exist: (1) The language of the request as disclosed by the record in this court would have been meaningless if read to the jury without modification, and a request to charge should always be refused unless the form of the proposed charge is such that it may read without change. State v. Hellekson, 13 S. D. 242, 83 N. W. 254. (2) Where, as in this case, the offense charged is not divided into degrees, the court is not required to charge the jury as to an offense that might be included in the charge made, but which the evidence would not warrant. State v. Kapelino (S. D.) 108 N. W. 335. Under the evidence defendant was either guilty of the crime charged or not guilty of any offense. The judgment of the circuit court is affirmed.

FULLER, P. J., dissents.