Albert J. HARDY, Petitioner
and Respondent,

v.

Howard Scott CUNNINGHAM, a minor un-
der eighteen years of age, and Ralph Cun-
ningham and Carolyn Cunningham, his par-
ents, Respondents and Appellants.

In the Matter of Howard Scott Cunningham,
a child under the age of eighteen years.

Civ. No. 8523.

Supreme Court of North Dakota.

April 24, 1969.

Greenwood, Swanson & Murtha, Dickinson, for respondents and appellants.

Albert J. Hardy, Asst. State's Atty., Dickinson, for petitioner and respondent.

TEIGEN, Chief Justice.

Howard Scott Cunningham, a minor sixteen years of age, was found to be a delin-

quent child in a proceeding before the Stark County juvenile court. The court found that Cunningham had possessed and sold marijuana to Beauchamp, another minor, age seventeen, on Sunday, June 9, 1968. The court also found that Cunningham's parents, who were made parties to the proceedings and were present at the hearings, were unable to properly control, supervise, discipline, and train him, and that it was for the best interests of the State that their son be taken from them and placed in the Industrial School. A motion for a new trial was denied. This appeal is taken from the order denying a new trial and from the judgment of commitment.

Cunningham and a friend named Stoughton arrived at Dickinson, Stark County, North Dakota, on June 9, 1968, from Billings, Montana, where they lived. Some time after they arrived, Stoughton approached Beauchamp, a job corpsman stationed at Dickinson, and offered to sell him cigarettes containing marijuana. Beauchamp said he had no money but was interested. Beauchamp then went to the Dickinson police and informed them of the offer. The police gave him a marked five-dollar bill with which to make a purchase. Beauchamp returned to where Cunningham and Stoughton were waiting. After some conversation, Cunningham and Beauchamp went to a gasoline filling station nearby and Stoughton went to the theater. Beauchamp purchased eleven or twelve cigarettes containing marijuana from Cunningham in the men's restroom of the filing station and gave him, in payment thereof, the marked five-dollar bill he had received from the police. When the boys left the filling station, Beauchamp signaled a policeman waiting nearby. The boys separated and Beauchamp gave the cigarettes containing marijuana which he had purchased to the policeman. The police took Cunningham into custody. They also took Stoughton, who was at the theater nearby, into custody. Both boys were taken to the Dickinson police station. Later both boys were transferred to the county jail where the county sheriff accepted custody of them. The following day being Monday, the boys were brought before the juvenile court where bond was set and the matter continued until formal process could be drawn and served. Bond was furnished and the boys were released. The boys were proceeded against separately in juvenile court. We are concerned here only with the proceeding against Cunningham.

The contention is made that while Cunningham was in the custody of the Dickinson city police and held in the Stark County Jail his constitutional rights were violated and therefore certain exhibits were not admissible in evidence against him. These exhibits are a five-dollar bill used by Beauchamp to make the purchase and obtained from Cunningham when he was asked to empty his pockets at the police station, a map which he drew and gave to another prisoner while in the county jail disclosing the hiding place of additional marijuana, and the marijuana found by following the map.

This contention is based on the following claims:

1. That Cunningham was not advised of his constitutional rights, as required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, 10 A.L.R.3d 974; or

2. That if he was advised of his rights he did not knowingly and intelligently waive them; or

3. That as a matter of law a sixteen-year-old child cannot waive his constitutional rights.

No claim is made that any of Cunningham's constitutional rights were violated in the adjudication proceedings before the juvenile court. The claim is that they were violated in the preadjudication or accusatory stage and that, therefore, the evidence referred to above and obtained during that period became fruit from the poisoned tree and not admissible in evidence against him

in the court proceedings that followed. However, we need not pass on these questions here.

■ Cunningham was not interrogated by the police nor by the sheriff. No incriminating admissions were sought from him and none were obtained. No claimed admissions were introduced in evidence. It appears from the record that Cunningham was asked to identify himself, and before being taken to the county jail he was asked to empty his pockets. It appears he voluntarily gave his name and, on request, emptied the contents of his pockets. Among the contents was the marked five-dollar bill. Had Cunningham refused to empty the contents from his pockets, the police would have searched him. Such a search would have been incidental to a lawful arrest, and therefore legal. The marked five-dollar bill was on Cunningham's person and would have been found, had a search been made. Arrest without a warrant is lawful if predicated on reasonable cause to believe the person arrested has committed a felony. Section 29–06–15(3), North Dakota Century Code. That there was reasonable cause to believe Cunningham had committed a felony just prior to being taken into custody is well established by the record. The police had been informed by Beauchamp that he had been approached and solicited to purchase marijuana. The police questioned him thoroughly, determined he was reliable, and decided to act on the information which he supplied them. They gave him a marked five-dollar bill and told him to wait for a period of about five minutes while the chief of police went to the railroad depot where Cunningham and Stoughton were waiting for Beauchamp. The chief of police seated himself in the depot and waited. He observed Cunningham and Stoughton in the depot. A few minutes later Beauchamp came in where he had a rendezvous with Cunningham and Stoughton. After a short conversation the three boys left the depot and the chief of police watched them. Stoughton left the other two boys and went toward a theater located nearby. Cunningham and Beauchamp went around a corner and toward a filling station. The chief of police continued to watch. In a very few minutes Beauchamp returned and signaled to the chief of police, holding up for him to see a white package which the chief of police understood to contain marijuana. The chief of police then instructed two of his policemen to take both Cunningham and Stoughton into custody. The chief of police then called Beauchamp to where he was seated in his automobile and obtained from him eleven or twelve homemade cigarettes containing marijuana, wrapped in toilet tissue. The two policemen took Cunningham and Stoughton into custody and brought them to the police station, after having patted them down for weapons. Upon arriving at the police station, the two arresting officers and the chief of police asked Cunningham and Stoughton for identification. They said they had none. Apparently, however, they did state their names and residences. They also made some explanation for being in Dickinson. None of the statements made were incriminating and no further interrogation was made. The officers knew their prisoners were minors as it appears one of the officers attempted, without success, to telephone the juvenile commissioner and the juvenile court judge. The arrest was made on a Sunday and for that reason they could not reach either of them. Our law provides that when a child under the age of eighteen years is arrested, either with or without a warrant, he shall be taken immediately to the juvenile court. Being unable to reach the court by telephone, the officers proposed to transfer their prisoners to the county jail where they could be held until the juvenile court was available. During this period another officer read to them the *Miranda* warning contained on a card carried by the officer for that purpose. They were also requested to empty their pockets. Cunningham complied with this request and the contents from his pockets disclosed he had possession of the marked five-dollar bill. The

police seized the bill and it was later introduced in evidence in the juvenile court proceedings subsequently held. It is not clear from the record whether the *Miranda* warning was read before or after the request was made to empty their pockets. It appears the whole process described above did not take more than fifteen minutes. It is on the basis of the failure of the record to clearly show that the *Miranda* warning was read to Cunningham before he was requested to empty his pockets that Cunningham makes his first claim. However, under the facts we do not find the requirements of the *Miranda* decision applicable in this case. *Miranda* deals explicitly with exculpatory or inculpatory statements stemming from questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way and holds that the prosecution may not use such statements unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment's privilege against self-incrimination, and proceeds to lay down the guidelines. We are not here concerned with such statements or admissions, or the use of them in a trial. We are here concerned with physical evidence of fruits of a crime while in possession of the accused and which was discovered and seized by the arresting officers as incident to the arrest. Our statutes provide that marijuana includes all parts of the plant "cannabis," which it classifies as a narcotic drug. Section 19–03–01(12), N.D.C.C. The sale of a narcotic drug, except as authorized by statute, is a felony. Section 19–03–02, N.D.C.C. The request made of Cunningham to empty his pockets was made by the officers who arrested him while he was still in their custody, and within fifteen minutes of his arrest. It was the method employed by the officer of searching him. The search was clearly incident to the arrest of Cunningham, predicated on reasonable cause to believe that he had committed a felony. The record clearly establishes the police officers had such cause and there was reason to believe that the person arrested had committed a felony. A search and seizure incident to a valid arrest is reasonable under the Fourth Amendment to the United States Constitution. United States v. Rabinowitz, 339 U. S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 277.

"* * * A search and seizure incident to a valid and lawful arrest is not unreasonable and violates no constitutional guarantees. In such circumstances, officers '* * * when making a lawful arrest with or without a search warrant [may] discover and seize any evidence, articles or fruits of crime found upon the prisoner or upon the premises under his control at the time of his lawful arrest * * *.' "

Commonwealth v. Aljoe, 420 Pa. 198, 216 A.2d 50, 16 A.L.R.3d 1126, quoting Commonwealth v. Gockley, 411 Pa. 437, 447, 192 A.2d 693, 698.

For the reasons aforesaid we find that the marked five-dollar bill was admissible in evidence against Cunningham on a charge alleging that he had unlawfully possessed and sold marijuana.

In a case wherein the defendant was charged with murder of his wife in the State of Michigan it was claimed that a seizure by the police of a blood-stained shirt worn by the defendant at the time of his arrest violated his constitutional rights because he was not warned that it would be used against him. The validity of the defendant's arrest was not questioned. The court held that under such circumstances a seizure of incriminating evidence incidental to a lawful arrest is proper so long as the search and seizure is reasonable, and that the arresting officer need not advise such a defendant that the seized evidence can be used against him. The court stated:

"* * * Defendant has confused his privilege against self-incrimination, guaranteed by the Fifth Amendment to

the United States Constitution, with those rights freeing him from an unreasonable search and seizure under the Fourth Amendment. * * *"

People v. Clark, 5 Mich.App. 672, 147 N.W.2d 704, 707. See also 47 Am.Jur. Searches and Seizures, Sec. 19, and 79 C. J.S. Searches and Seizures § 26.

■ Cunningham and Stoughton were taken from the city jail the same day and turned over to the sheriff of the county who placed them in the county jail to await juvenile court appearance the next morning. The same evening Cunningham had a conversation with another prisoner named Reager. Reager was incarcerated on a bad check charge. During the course of this conversation on Sunday evening, Cunningham told Reager that he and Stoughton had more marijuana which they had hidden. Reager told Cunningham if he would draw a map and give it to Reager he would give it to a friend on the outside who would find and destroy it. Cunningham drew a map on a piece of brown paper torn from a paper sack and gave it to Reager. The map directed the reader to a window well in an alley located behind the theater and the filling station referred to earlier in this opinion. Reager, however, gave the map to the sheriff when he brought in his breakfast tray the next morning. The sheriff delivered the map to the Dickinson police. A detective was assigned to check on the matter. The detective followed the directions contained on the map and they led him directly to a pouchful of raw marijuana. The map and the pouch of marijuana were received in evidence in the juvenile court proceeding that followed. The only objection made upon the record to receiving these exhibits was on the ground that no proper foundation was laid. Counsel for Cunningham has now apparently abandoned that objection. He alleges in this court, on appeal, that it was error to admit this evidence on the ground that it was obtained in violation of Cunningham's Fifth Amendment constitutional rights under the *Miranda* decision.

We do not agree. *Miranda* deals with custodial interrogation by law enforcement officers. Reager was not a law enforcement officer and the map was not the product of interrogation by anyone. Reager testified at the hearing and was cross-examined by counsel for Cunningham. We find nothing in the record that indicates that Reager acted at the request of law enforcement officers or that he expected or received any reward or benefit from his action. On cross-examination he testified to his reason for taking this action. He said: "I did this voluntarily to help out other people." We cannot determine from the record that Cunningham's action, in drawing the map and giving it to Reager, was anything but an attempt, freely and voluntarily done, to destroy or have destroyed the possibility of further evidence against him.

Cunningham makes no claim that his constitutional rights were violated in the adjudication stage of the proceedings. Further, he makes no claim that it was error for the juvenile court to have adjudicated that he was a delinquent child, if the evidence alluded to above was admissible against him. However, he does challenge the court's decision in the disposition stage of the proceedings. He claims that the court erred and exceeded its authority by terminating parental custody and committing him to the State Industrial School.

There is no question here of jurisdiction of the subject matter or of the persons involved, including the parents of Cunningham, and no issue is raised challenging the jurisdiction. The question that arises is: Was the order committing Cunningham to the State Industrial School for his best interests and the best interests of the State of North Dakota?

Cunningham, and his parents, lived at Billings, Montana. However, Cunningham had not been living with his parents. Cunningham had used marijuana before. This fact had been reported to the Billings police. The Montana juvenile court, in returning him to the custody of his parents,

placed him on probation and imposed conditions of behavior. Two of these conditions were that he discontinue the use of marijuana and other drugs, and that he be in his parental home each night by 7:00 o'clock p. m., except certain' nights when his band played at a dance. It appears that Cunningham, however, continued to use marijuana, and that he left the parental home to live in a house with another youth, without adult or parental supervision or consent. This arrangement continued until he and the other youth were unable to get along, following which Cunningham "just stayed wherever I was able to." He was a sophomore in high school but failed to pass the grade. At the time he was picked up on the present charge, his parents were on vacation and out of the city, and had made no arrangements for the care or custody of their child, except that his mother had given him some money before the parents left. It also appears that Cunningham has admitted to the use of drugs stronger than marijuana. Cunningham had open-heart surgery when he was about four and one-half years old and, according to the evidence, should have additional open-heart surgery again in the future. However, the parents testified that they would rather not make the decision as to when a second operation should be had and would just as soon leave that decision to their son. In view of these facts, the parents admit that they have been more permissive with this child than with their other two children. The record also establishes that Cunningham has associated with other boys who use marijuana, in addition to Stoughton, who was with him on the occasion and issue in this proceeding, and that he was using marijuana while he was on probation from the Billings, Montana, juvenile court.

Section 27–16–08, N.D.C.C., provides:

"Except as otherwise provided by law, the court shall have original jurisdiction in all proceedings:

1. Concerning any child residing in or who is temporarily within the county:

a. Who has violated any city or village ordinance or law of this state or of the United States;

b. Who has deserted his home without sufficient cause or who is habitually disobedient to the reasonable and lawful commands of his parents, guardians, or other custodians;

c. Who habitually associates with dissolute, vicious, or immoral persons, or who is leading an immoral or vicious life;

\*     \*     \*     \*     \*     \*

■ Clearly, Cunningham's conduct was such as to bring him within the provisions of the above statute, and the juvenile court had jurisdiction to make an order with respect to his custody.

Cunningham thus shall be considered as a ward of the State and his person is subject to the care, guardianship, and control of the court, as provided by our juvenile law. Section 27–16–10, N.D.C.C. Cunningham being found to be within the provisions of juvenile court laws provided in Chapter 27–16, N.D.C.C., the court, by decree, was empowered to commit him to a suitable public institution or agency or to any private institution or agency for the care of children approved and licensed, as provided therein, or to place him under supervision in his own home or in the custody of a relative or other proper person, or order such further care and treatment as the court may deem to be for his best interests. Section 27–16–21, N.D.C.C. The State Industrial School is a general reform and industrial school of the State for the detention, instruction, and reformation of juveniles of both sexes who are committed to it according to law. Section 12–46–01, N.D.C.C.

■ Having found that Cunningham was properly a ward of the State, it was

the duty of the court to determine what is for his best interests, and, in determining that issue, juvenile court is vested with a wide discretion. State v. Smith, 75 N.D. 29, 25 N.W.2d 270. We thus reach the second question: Was the order committing Cunningham to the State Industrial School for his best interests and for the best interests of the State of North Dakota? In discussing this problem in State v. Myers, 74 N.D. 297, 22 N.W.2d 199, we stated:

"We realize that proper disposition of cases of juvenile delinquency requires a delicate balancing of mixed considerations and that even the most careful weighing of pertinent factors can only result in conclusions that are speculative to the extent that they attempt to predict the course of future events. Confidence that a correct conclusion has been reached must of necessity rest upon hope founded in experience, rather than on certainty. We think therefore that the problem should be approached in a spirit of optimism and that drastic remedies should not be invoked where we can have reasonable hope that lesser ones will have an equal if not a complete success."

The juvenile court, in this case, had before it the delinquent and his parents, all of whom testified in the proceedings. The judge of the juvenile court was in a better position than we are to determine to what extent the welfare of the delinquent could be balanced against the welfare of the State, and also the willingness and ability of the parents to control him. We have but the cold record before us for review. However, on the basis of the record, we find a sixteen-year-old boy, going on seventeen, who in January of 1968 came before the juvenile court of his home town for having marijuana in his possession. This was contrary to the State law and this fact was made known to him. He was paroled to his parents, on condition that he would not traffic in, use or possess marijuana, and certain other conditions affecting his behavior. He violated these conditions. The record also establishes that the parents had lost control of him and, when they went on vacation, left him without supervision or care within approximately five months after the parole. During the absence of the parents on vacation, the child was apprehended for possession and sale of marijuana at Dickinson, North Dakota. Under these circumstances, we hold the good of the State requires that Cunningham, the child, be removed from the community as his delinquency is such that he has become a danger to society because of his own conduct and his conduct toward others. The parents, even with the assistance of the court order providing that Cunningham should remain in his parental home under their supervision, were unable to control their son, and, as a result, he continued to violate the law and the order of the court and further broadened the scope of his delinquent behavior to include the city of Dickinson in this State. The judge of the juvenile court has passed on this question and we cannot say that he was in error or that the disposition which he ordered should be disapproved. In view of this decision, the judgment of commitment is affirmed. We have also reviewed the motion for a new trial and find that the same issues were raised as have been covered in this opinion, and we therefore also affirm the order denying the motion for a new trial.

KNUDSON, PAULSON, ERICKSTAD and STRUTZ, JJ., concur.