STATE, Respondent v. RIGSBEE, Appellant

(233 N.W.2d 312)

(File No. 11389. Opinion filed September 19, 1975)

Petition for rehearing denied October 27, 1975

Frederic R. Moulton, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., Pierre, on the brief.

Sidney B. Strange, Sioux Falls, for defendant and appellant.

DUNN, Chief Justice (on reassignment).

Defendant was convicted of possessing more than one ounce of marijuana by the Circuit Court of Codington County sitting without a jury. He was sentenced to spend two years in the State Penitentiary. He assigns as error four aspects of the trial court's decision. The major issue is whether the trial court properly refused to suppress a large quantity of marijuana which defendant had in his vehicle at the time of his arrest.

The record reveals that between 5 and 5:30 p. m. on March 16, 1973, Officer Durham of the Watertown police received information from a confidential informant that "Mr. Rigsbee had marijuana or a controlled substance in his vehicle and he normally went to the Club 20 between 6:20 and 7:00, and * * * that he had been selling marijuana out there." Officer Durham considered the informant to be reliable, and defendant does not challenge that reliability here. In addition to this information, Officer Durham knew that defendant had previously been arrested for possession of less than one ounce of marijuana and that he had a reputation in Watertown as being a seller of controlled substances.

As a result of the tip, Officer Durham, along with Officer Witt, waited in a patrol car several blocks from defendant's house until the defendant left in his car at approximately 7:10 p. m. The officers followed Rigsbee and stopped his car when he turned onto Highway 20 at about 7:15 p. m. Officer Durham told him that he "had information to believe that [Rigsbee] had marijuana

in his car * * *." Rigsbee was asked several times if the officers could search his car and he was informed that if he refused the officers would have to get a search warrant.

The defendant refused to allow a search of his car at that time. He was then taken into custody and driven to the police station by Officer Witt. Officer Durham drove the defendant's car to the station.

At this point there is a conflict in the testimony. The defendant claims that when he arrived at the police station he was taken to the interrogation room where he was told that if he did not consent to a search of his car that the police would get a warrant and "tear it apart." He says that he then went with the officers to the car and retrieved three bags of marijuana from the glove compartment. He was then taken back to the interrogation room and later led the officers back to the car where he produced a larger quantity of marijuana from a compartment in the back of the car.

The police version of what happened at the station is entirely different. They testified that as Rigsbee was being taken into the station through the garage that he told Officer Durham, " 'You don't need a search warrant, I will get the stuff for you.' " He then went to the car and produced three bags of marijuana which he got out of the glove compartment. Officer Durham also testified that he never told the defendant that he would tear his car apart if he had to get a search warrant or threatened the defendant in that manner.

The pivotal issue in this case is whether the police had sufficient probable cause to stop the defendant's car on Highway 20 and take the defendant into custody. If the police had no probable cause to arrest the defendant, all that followed could be tainted by this illegal stop. *Wong Sun v. United States*, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Cf. *Brown v. Illinois*, 1975, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. The test to determine the sufficiency of an informant's tip as it relates to probable cause was set out by the United States Supreme Court in *Aguilar v. Texas*, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Although the case dealt specifically with the sufficiency of an affidavit for a search warrant, the test has been

used in determining if probable cause exists where there is an arrest without a warrant. See *McCray v. Illinois*, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; *Beck v. Ohio*, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

Mr. Justice Goldberg, writing for the majority in *Aguilar*, set out a two-prong test to determine the sufficiency of the information from an informant as it relates to probable cause:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233, the magistrate must be informed of *some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed,* see *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was *'credible' or his information 'reliable.'* " 378 U.S. at 114-115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. (emphasis supplied)

There is no question in the instant case that the second prong of the test was met. Officer Durham testified that the informant had supplied reliable information about criminal activity to him in the past. In addition, defendant concedes the credibility of the informant. The threshold question is whether the first prong of the *Aguilar* test was met. Simply stated, did Officer Durham at the suppression hearing supply "underlying circumstances from which the informant concluded that the [marijuana was] where he claimed [it was]?"

The first part of the *Aguilar* test has come to be known as the "basis of knowledge" prong.* It was clarified by the Supreme Court in *Spinelli v. United States*, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. There the Court stated:

---

\* An Informant's Tip as the Basis for Probable Cause: Modified Aguilar Standards, 20 S.D.L.Rev. 363, 367 (1975); Moylan, *Hearsay and Probable Cause; An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 747 (1974).

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

"The detail provided by the informant in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, an informant named Hereford told federal narcotics agents that Draper had gone to Chicago and that he was going to bring back three ounces of heroin. He gave the agents Draper's description and told them that Draper would be arriving in Denver by train at a certain time on one of two days. He said that Draper habitually walked fast and that he would be carrying a tan zipper bag. When Draper did arrive by train he was arrested and the heroin was found in his possession. The court held that the informant's tip, plus the verification of the tip by the police, was sufficient to establish probable cause for Draper's arrest and the search of his person.

"* * * Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true." 358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 332.

In examining whether there were underlying circumstances showing the informant's basis of knowledge of the criminal activity in this case we will use *Draper v. United States,*

supra, as a benchmark as suggested by the Court in *Spinelli v. United States*, supra. The informant here told Officer Durham (1) that Rigsbee was in town, (2) that he usually went to Club 20 where he sold marijuana, (3) that he would leave for Club 20 between 6:30 and 7 p. m., and (4) that he would have a controlled substance in his car. Before making the arrest, Officer Durham personally verified most of the informant's tip: the defendant was at home; he did leave home within ten minutes of the time the informant said he would leave; and he was proceeding in the direction of Club 20 at the time he was stopped by the officers. The only bit of univerified information was that Rigsbee would have a controlled substance in the car.

Considering the information given by the informant as a whole and the subsequent verification by the officers, we conclude that the informant did have firsthand knowledge of the defendant's criminal activity. We hold that this information, plus the proven credibility of the informant meets the two-pronged *Aguilar* test for probable cause. Therefore the officers were justified on the basis of the informant's tip in taking the defendant into custody.

This holding is in complete accord with the latest pronouncement from the Eighth Circuit Court of Appeals regarding the *Aguilar-Spinelli-Draper* line of cases. In *United States v. Cummings*, 1974, 507 F.2d 324, a reliable unnamed informant notified law enforcement authorities that slot machines were being carried into Sioux Falls, South Dakota. He described the U-Haul truck that carried the slot machines, gave the license number of the truck, and stated that the driver was one James Christensen of Sioux Falls. On the basis of this tip a search warrant was issued by a municipal judge in Sioux Falls and slot machines were found in the described truck. The Court of Appeals examined the informant's tip and concluded that it contained enough self-verifying detail to allow a magistrate to believe that the informant had firsthand knowledge of the criminal activity and thus it met the first prong of the *Aguilar* test. The Court stated at p. 329:

"The key question which must be asked by the magistrate is: 'Can it fairly be said that the tip, even

when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's.* tests without independent corroboration?' *Spinelli v. United States, supra,* 393 U.S. at 415, 89 S.Ct. at 588. In the instant case we are convinced that the answer must be in the affirmative."

We are also convinced that the tip given to Officer Durham in this case was sufficient in detail and, like the Eighth Circuit Court of Appeals, we answer the above question in the affirmative.

Defendant next argues that the marijuana should have been suppressed because he involuntarily consented to the "search" of his vehicle. Defendant uses the word "search" in his brief, although, technically, no police search took place. The record reveals that on two different occasions defendant led the officers out to his car in the police garage and he himself entered the car and handed the bags of marijuana to the officers. Rather than speak of this as a "search," we prefer to call what took place a "seizure" by the officers. However, in doing so we do not imply that the constitutional mandates of the Fourth and Fourteenth Amendments are any less strict for a seizure alone than they are for a search and seizure by law enforcement officers.

The trial court made no determination as to whether defendant voluntarily produced the marijuana. Since the trial court did not rule on this question, we choose not to decide it on this appeal. Rather, we hold that the police had probable cause to search the car themselves and thus they were justified in seizing the marijuana which the defendant produced from the car. Viewed in this light, the question of voluntary consent by the defendant is irrelevant.

■ The police officers had probable cause based on the informant's tip to stop the defendant on the highway. Since the informant told them that there was contraband in the car, they had probable cause to conduct a search on the spot or at the police station.

In many respects the facts of this case are similar to those in *Chambers v. Maroney,* 1970, 399 U.S. 42, 90 S.Ct. 1975, 26

L.Ed.2d 419. There the police, acting without a warrant but with probable cause, searched a vehicle which they believed was involved in an armed robbery and contained guns and money taken in the robbery. The Court upheld the warrantless search.

> "* * * [T]he police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat. As the state courts correctly held, there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money." 399 U.S. at 47-48, 90 S.Ct. at 1979, 26 L.Ed.-2d at 426.

The Court went on to say that it made no difference that the vehicle was searched at the station house rather than on the highway.

> "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428-429.

In the instant case the police had the necessary probable cause to search for marijuana at the station house. The fact that the defendant produced the marijuana and they then seized it does not change the outcome. The warrantless seizure did not violate the Fourth and Fourteenth Amendments. Therefore, we conclude that the trial court committed no error in refusing to suppress the marijuana.

Defendant raises several other assignments of error which we feel to be without merit and they will not be discussed in this opinion.

The conviction of the defendant is affirmed.

WINANS and WOLLMAN, JJ., concur.

DOYLE and COLER, JJ., dissent.

DOYLE, Justice (dissenting).

As stated in the majority opinion, the defendant Rigsbee was arrested by officers of the Watertown Police Department on information that " 'Mr. Rigsbee had marijuana or a controlled substance in his vehicle and he normally went to the Club 20 between 6:20 and 7:00, and  *  *  *  that he had been selling marijuana out there.' " Upon this meager information, it is contended that probable cause existed for the arrest of the defendant.

In dealing with probable cause based partially on an informant's tip, the United States Supreme Court has said:

> "The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered." *Spinelli v. United States*, 1969, 393 U.S. 410, 415, 89 S.Ct. 584, 588, 21 L.Ed.2d 637, 643.[1]

In *Aguilar v. Texas*, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, an informant's tip used to secure a search warrant was measured against the following test:

> "[T]he magistrate must be informed of some of the *underlying circumstances from which the informant con-*

---

1. *Spinelli* and *Aguilar* both dealt with the sufficiency of affidavits in support of issued warrants. While there were no affidavits or warrants in this case, the standards for determining probable cause are at least as stringent. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

*cluded that the narcotics were where he claimed they were,* and some of the *underlying circumstances* from *which the officer concluded that the informant * * * was 'credible' or his information 'reliable.' "* 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. (emphasis supplied)

The second *Aguilar* criterion, as noted in the majority opinion, is not in question here. Defendant concedes the reliability of the informant, and absent such a concession I would reach the same result. This informant had been used before and had been instrumental in several arrests and convictions. Cf. *McCray v. Illinois,* 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; *Walker v. Nelson,* 1972, 9 Cir., 468 F.2d 451.

However, just as surely as this tip passes one of *Aguilar's* tests, it fails the other. The record is totally void of any "underlying circumstances" that would tell a magistrate or this court why the informant believed defendant had the marijuana. This is a reasonable requirement and it is one this court should not be willing to forsake for the expediencies of law enforcement. The Fourth Amendment favors the use of a warrant and the standard of probable cause to "assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." *Spinelli v. United States,* 1969, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637, 645. When, because of the practicalities of law enforcement, an arrest is made without a warrant, a court acting after the fact must be able to determine whether probable cause existed. If there was probable cause, the arrest will be upheld. If probable cause did not exist, the arrest becomes a nullity. In either case, the constitutional protections guaranteed the citizenry are left intact. The decision to arrest may be made by the police, but the determination of probable cause still belongs to the courts.

When, however, an informant relates only that a crime will be committed and does not tell how he reached this conclusion, the *courts are precluded from performing their constitutional duty*—the determination of probable cause. Informants, regardless of their reliability, are capable of drawing unjustified conclusions. Personal observation would obviously be enough to

affirm the informant's conclusion, but I am presented with none of the *"underlying circumstances"* available to the informant in this case. I am unable to determine whether the informant was basing his conclusion on probable cause, and I refuse to delegate that function to a non-judicial officer. The informant's tip must be held inadequate.

Finding the tip insufficient, I must now follow the instructions of *Spinelli v. United States,* supra, to determine whether the insufficient tip can be teamed with any independent corroboration to reach the sum of probable cause. The only other facts at hand are Officer Durham's knowledge of defendant's record and the informant's assertion that Rigsbee would be traveling to a certain place at a certain time.

The state cites *United States v. Harris,* 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723, for the proposition that knowledge of a previous record can cure a tip not meeting the first *Aguilar* test. I do not read *Harris* in this manner. Harris' conviction had been reversed in the court of appeals because "there was no substantial basis for believing that the tip was truthful." 403 U.S. at 579, 91 S.Ct. at 2080, 29 L.Ed.2d at 731. *Harris* centered on this issue. The question was whether the informant could be believed, a basic requirement of *Aguilar.* The United States Supreme Court merely held that when an informer's tip is deficient in the truth department, the policeman's knowledge of the defendant's record, while perhaps not sufficient, is certainly relevant to the believability of the tip. In *Harris v. United States,* supra, the tip was found sufficient under *Aguilar.* [2]

The case at hand, however, is entirely different. The truthfulness of the informant is not in doubt, it is the wisdom of his conclusion that is questioned here. The fact that Officer Durham knew about defendant's previous record really says

---

2.  *Aguilar* requires "underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.' " There is no requirement that these "underlying circumstances" for the officer's conclusion be contained in the tip or even be supported by the informer's past performance. Anything within police knowledge, I believe, that makes the tip believable, is relevant to that branch of the *Aguilar* test.

nothing about whether the *informant* had probable cause to believe Rigsbee possessed a controlled substance—*the other branch of the Aguilar test.*

Independent corroboration may, however, be used in another manner. *Draper v. United States,* 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, is the classic example of this. There the additional information given the police by the informant was so detailed that although the basis for the informant's conclusion was missing, the sheer weight and detail of those extra facts gave the police probable cause to arrest once the facts were confirmed by police observation.

The basis of this approach is, I believe, that when the police have enough outside information, whether from the informer or otherwise, to believe that the informer knows so much about the suspect to have probable cause for his conclusion, the police also have probable cause. Here we have only Rigsbee's previous record and the statement that Rigsbee would be traveling a certain road at a certain time. This hardly compares to the detailed description in *Draper v. United States,* supra; and, assuming *Harris* was using independent corroboration in this manner, the extra information available to the police in that case far outweighs the information present here. In *United States v. Harris,* supra, the informant's tip also constituted a declaration against penal interest; the authorities had received numerous reports from various people regarding Harris' illegal activity; and a stash of illicit whiskey had previously been seized from an abandoned house under Harris' control.

We find the facts in this case remarkably close to *Beck v. Ohio,* 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. The United States Supreme Court noted that:

> "All that the trial court was told in this case was that the officers knew what the petitioner looked like and knew that he had a previous record of arrests or convictions for violations of the clearing house law. Beyond that, the arresting officer who testified said no more than that someone (he did not say who) had told him something (he did not say what) about the petitioner."

The same conclusion has been reached in recent decisions of the courts of appeals. In *United States v. Bursey,* 1974, 5 Cir., 491 F.2d 531, an informant indicated that four specified individuals were in town to purchase marijuana. A computer printout indicated that one of them had previously crossed the border with marijuana. Furthermore, two days later a second informer indicated that three persons of the four "were staying at a local motel and intended to obtain narcotics in nearby Rio Grande City * * *." 491 F.2d at 532. According to the Fifth Circuit, neither of these two tips "related the detail suggestive of a credible basis for the information given by the informants." 491 F.2d at 534. I suggest that the information before us was comparable to that of *Bursey.*

Nor may easily available, innocent information be added to a bald assertion of wrongdoing to satisfy the requirement that an informer show an adequate basis of knowledge for his information. In *United States v. Hamilton,* 1974, 9 Cir., 490 F.2d 598, the court considered a situation wherein an informant pointed out a particular car on the street and asserted that it had marijuana hidden in a false compartment in the body bed. The language of the Ninth Circuit is particularly appropriate here. "In the case at bar all the government had was a statement supported by nothing that was not open and obvious to anyone. We know of no case suggesting that this is enough." 490 F.2d at 601. In this case it could be known to anyone that the defendant went regularly to a bar using a car at about 6:30 p. m. The informer only added his tarnished assertion that the defendant carried marijuana. This indeed is exactly what was held insufficient in *Hamilton* and what should be held insufficient here. One should not be able to stand on the street, gain information about a stranger, add to that information an assertion that he carries contraband and have a warrant issued and sustained on that basis. Some of the details of the wrongdoing or the contraband itself must be added.

I wish to state my view that the majority opinion is not justified by the decision of the Eighth Circuit Court of Appeals in *United States v. Cummings,* 1974, 507 F.2d 324. In *Cummings* the informer "stated that slot machines were being transported and gave an estimated value of this equipment. He described the

truck by color and by rental system. He indicated the license number of the truck. And he correctly identified the driver and the destination of the truck." 507 F.2d at 329. In the case considered herein, we know only that the defendant usually drove his car, which apparently was undescribed, to the Club 20 about 6:30 each night. No license plate number was given. There is an assertion that he carried marijuana but there is no indication of how much he·carried or the value of it.

I can only say that I find the difference in detail in the instant case and in *Cummings* to be substantial, and I am totally unable to reconcile myself to the majority view that the degree of detail present in the two cases is essentially the same.

Since I find the arrest to be invalid, the subsequent .search cannot be justified as incident to an arrest. See *Beck v. Ohio*, supra·. Furthermore, any search conducted at a *place* and *time remote* from the arrest cannot be justified as incidental to the arrest. *Preston v. United States*, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d.777. Nor can this search be justified under the probable-cause-plus exigent circumstances exception. See *Chambers v. Maroney*, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Since I find no probable cause existed to arrest the defendant for possession of marijuana, logic demands that I also find no basis, absent the probable cause, to believe that Rigsbee possessed marijuana for the purposes of a search.

It is urged that the defendant consented to the search at the police station when he retrieved the marijuana from his car. We have addressed this question previously in *State v. Cochrane*, 1970, 84 S.D. 527, 173 N.W.2d 495, where Judge Homeyer said, "A distinction is recognized between submission· to apparent authority of an officer acting under a warrant and unqualified consent." I believe the same principle applies here. It is hard to believe that when a person is apparently under arrest he would willingly aid in the production of incriminating evidence. Such "consent" is more likely to be a submission to the apparent authority of the police rather than a voluntary relinquishment of important constitutional rights. The burden is on the state to prove a waiver of constitutional rights, *State v. Cochrane*, supra, and that burden has not been met here.

For these reasons, the evidence obtained from defendant's car should have been suppressed.

COLER, Justice (dissenting).

The majority opinion chooses not to rule on the question of the voluntariness of the act of the defendant in turning over the incriminating evidence to the officers. I am convinced that the sole issue is whether the defendant voluntarily gave evidence that incriminated him and that his constitutional rights cannot be so by-passed.

At the close of the suppression hearing the trial court denied the motion to suppress without stating its reasons. However, at the close of the trial the following statement appears:

"It is the court's opinion in this case that the police had reasonable basis upon which to make a search in this case. *This is not a search that was made incident to arrest. Here is a vehicle that could be moved out of the country immediately. The rules are different for searching an automobile than for searching a residence."* (emphasis supplied)

Obviously the trial court had in mind *State v. McCreary,* 1966, 82 S.D. 111, 142 N.W.2d 240; *State v. Klingler,* 1969, 84 S.D. 466, 173 N.W.2d 275 and *State v. Thunder Horse,* 1970, 85 S.D. 76, 177 N.W.2d 19, as justifying the admission of the evidence on the basis that it was a search of a vehicle and the rules are different than for searching a residence. While this statement is basically true the right to search depends on the facts and circumstances of each case and the circumstances of this case fall well within the plain language of *Chambers v. Maroney,* 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, cited by the majority opinion as supporting its position. However, the court further stated in that case:

"* * * if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.

Both the vehicle and the defendant were clearly within police custody and there was no threat of the destruction of evidence. *Coolidge v. New Hampshire,* 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Chimel v. California,* 1969, 395 **U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685;** *United States v. Rothman,* 1973, 9 Cir., 492 F.2d 1260. Officer Durham was twice advised by his superior to secure the search warrant and should have done so and certainly there was more than sufficient time to do so since there was a time lapse of nearly two hours between the delivery of the first and second batches of evidence by the defendant.

If the evidence is to be admitted as incident to an arrest, I believe that under the facts in this case, the language from *State v. Jackson,* 1933, 61 S.D. 499, 250 N.W. 55, applies:

> "By his act of seizing and searching appellant's automobile, without appellant's permission or without lawfully issued warrant permitting said search and seizure, said sheriff directly violated appellant's constitutional rights as guaranteed him by sections 9 and 11 of article 6 of the Constitution of South Dakota."

As indicated in the foregoing statement from *State v. Jackson,* supra, and as noted in *State v. Vey,* 1908, 21 S.D. 612, 114 N.W. 719, our court has, in keeping with the statement of law found in 22A C.J.S. Criminal Law § 650 and 8 Wigmore, Evidence § 2264 (McNaughton rev. 1961), considered that, in circumstances such as presented here, absent consent freely given, the privilege against self-incrimination guaranteed by the Fifth Amendment to the U.S. Constitution and Article VI, Section 9 of the South Dakota Constitution has been violated and therefore the evidence is not admissible. While, generally, courts have considered such factual situations on the question of consent to search and seizure, *Hardy v. Cunningham,* 1969, N.D., 167 N.W.2d 508; *People v. Clark,* 1967, 5 Mich.App. 672, 147 N.W.2d 704; *United States v. Rothman,* supra; *United States v. Culp,* 1973, 8 Cir., 472 F.2d 459, it should be noted that this court's recognition of the interrelationship of the rights guaranteed by §§ 9 and 11 of Article VI of this state's Constitution and the necessity for full compliance with both provisions has been

given like recognition as have the comparable provisions of the federal constitution. *Brown v. Illinois*, 1975, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, *citing Wong Sun v. United States*, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

To sustain the conviction on this record would have the effect of reinstating, by decision, the language of SDCL 23-15-2 as it stood prior to the 1972 legislative amendment. This court in *State v. Lane*, 1957, 76 S.D. 544, 82 N.W.2d 286, and again in *State v. McCreary*, supra, made it clear to the legislature that as to a search and seizure the end does not justify the means. The statement of law in *State v. Jackson*, supra, that the legislature, by the 1935 amendment to R.C.1919, § 4606, attempted to negate reads:

> "An improper and illegal seizure cannot be justified
> or sustained by information acquired after the seizure."
> 61 S.D. at p. 503, 250 N.W. at p. 57.

This should remain our statement of law on the subject.

It is well settled that the burden is on the one making the motion to suppress evidence to establish that such evidence was illegally seized. *State v. Merrill*, 1967, 82 S.D. 609, 152 N.W.2d 349. However, when the government relies upon consent to an otherwise illegal search and seizure, it has the burden of proving, by clear and convincing evidence, that consent was voluntary and free from duress and coercion. *State v. Shephard*, 1963, 255 Iowa 1218, 124 N.W.2d 712.

The trial court having found it unnecessary and, therefore, having failed to make a finding on the consent issue, I would reverse.